JESSIE LEMONS, Plaintiff-Appellee, *v.* CLYDE LEMONS, Defendant-Appellant.

First District (2nd Division)   No. 77-121

Opinion filed February 7, 1978.

James L. Harris, of Chicago, for appellant.

Sidney A. Jones, III, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This is an appeal by defendant, Clyde Lemons, from the entry of an order of the circuit court of Cook County denying defendant's petition to vacate a finding by the trial court that defendant was in arrears on certain child support payments stemming from a divorce decree entered between defendant and plaintiff, Jessie Lemons, and ordering defendant to pay plaintiff's attorney's fees in the amount of $750.

Two issues are presented for review: (1) whether the trial court erred in precluding defendant from collaterally attacking the validity of the divorce decree upon application of the doctrine of *res judicata*; and, (2) whether the award of attorney's fees was excessive.

On March 19, 1971, Jessie Lemons filed a complaint for divorce seeking dissolution of her marriage to defendant, Clyde Lemons, alleging *inter alia* that she and defendant were lawfully joined in marriage at Jackson, Mississippi on February 3, 1954, and thereafter lived and cohabited together until September 12, 1969. Three children were born to the parties as a result of this union. On August 19, 1971, defendant appeared generally and filed a countercomplaint for divorce alleging that at the time of his marriage to Jessie Lemons she had been lawfully married to one Hoover Timothy C. Jakes and, accordingly, defendant concluded that his marriage to plaintiff was void *ab initio*. On August 31, 1971, defendant also filed a petition to strike plaintiff's complaint on the grounds that she lacked legal capacity to sue and that the trial court was without jurisdiction over the subject matter of the action. Attached to this

petition was a certified copy of a divorce decree obtained by one "Jessie Lee Jakes" and purporting to dissolve her marriage to Hoover Timothy C. Jakes. This decree is dated September 2, 1954, approximately seven months subsequent to the date of plaintiff's marriage to defendant.

On September 9, 1971, plaintiff filed an answer to defendant's petition to strike in which she admitted that she had been married to Hoover Timothy C. Jakes at the time in which she was purported to have married defendant. However, as an "affirmative defense" plaintiff alleged that she had been 16 years of age at the time she entered into a "ceremonial" marriage to Jakes; that due to parental intervention this union had never been consummated; that Jakes, a serviceman, departed for duty in the Republic of South Korea on the day following the marriage ceremony; and, that Jakes' family subsequently received notification from the United States Government that Jakes had been listed as missing in action and presumed dead. Plaintiff further alleged that she, too, believed Jakes to be dead and, after fully disclosing these facts, married defendant, Clyde Lemons, and cohabited with him openly and notoriously from 1954 to 1969.[1] Plaintiff concluded that divorce removed the impediment which had theretofore voided her marriage to defendant and that their subsequent cohabitation in the State of Mississippi would, under the common law of that State, recognize and validate their marriage.

The matter came on to be heard on March 30, 1972, on *defendant's* motion to dismiss the "counterclaim" theretofore filed and, pursuant to this motion, the "counterclaim" was dismissed. No appeal was taken from this order.

On June 8, 1972, the parties stipulated that the cause be heard "as a default matter" and a decree of divorce was entered on plaintiff's complaint. The decree contained an express finding of the trial court:

> "3. That the parties were lawfully joined in marriage at Jackson, Mississippi, on February 3, 1964 [*sic*], and thereafter lived and cohabited together as Husband and Wife until on or about the 12th day of September, 1969."

Defendant's brief before this court characterizes this document as a "consent decree." Again, no appeal was taken from entry of this decree. Appended to this decree was a stipulation and agreement regarding a property settlement which directed, *inter alia*, that defendant pay plaintiff the sum of $150 per month in child support.

Approximately two years hence, defendant was found to be $1,100 in arrears on these payments and was ordered to comply with the decree.

On March 10, 1976, plaintiff filed a petition to modify the decree and

---

[1] Sometime after she married defendant Lemons, plaintiff learned that Jakes was alive, "immediately" left Mississippi, obtained a divorce in Illinois and returned to Mississippi. After "several months" of cohabitation in Mississippi the couple moved to California and subsequently to Illinois.

for a rule to show cause why defendant should not be held in contempt of court alleging a total failure by defendant to pay the stipulated $150 per month in child support now amounting to an arrearage of $2,650. Defendant answered this petition and denied the alleged arrearages. Defendant also asserted as an "affirmative defense" that his marriage to plaintiff was void *ab initio.* Plaintiff moved to strike this "affirmative defense" on the ground that the doctrine of *res judicata* barred further consideration of the issue. The trial court granted plaintiff's motion to strike and modified the decree to increase the child support payment, ordered payment of the arrearage on an installment basis and further assessed attorney's fees in the amount of $750. Defendant thereafter moved to vacate this order and from the denial of this motion to vacate defendant currently appeals.

Defendant initially contends that the trial court erred in precluding him from collaterally attacking the validity of the divorce decree upon application of the doctrine of *res judicata.* Defendant's position is grounded upon the notion that he may challenge the decree or divorce at any time and in any court because it is void for lack of jurisdiction in the trial court to entertain plaintiff's complaint.

■■ At the outset it may be noted that there can be no question as to whether the circuit court of Cook County was possessed of jurisdiction over the subject matter of this case. This court has defined jurisdiction over the subject matter as the power of the particular court to hear the type of case that is before it. (*Davis v. Davis* (1973), 9 Ill. App. 3d 922, 293 N.E.2d 399.) Jurisdiction of the subject matter does not depend upon the sufficiency of the pleadings, or on the validity of the demand, the regularity of the proceedings, or the correctness of the decision. (See 14 Ill. L. & Prac. *Courts* §16 (1968).) Pursuant to section 4 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 5), the circuit courts of the respective counties shall have jurisdiction in all cases of divorce allowed by that statute. We see no basis for the contention that the trial court lacked jurisdiction of the subject matter of the complaint. There is no issue here of jurisdiction over the person of the defendant. So far as this record indicates, he was properly served with summons in Cook County and has filed his general appearance. No collateral attack could have been made upon the decree of the circuit court on the ground that it lacked *subject matter jurisdiction* because of the alleged lack of *standing* on the part of plaintiff to bring a complaint for divorce.

In any case, defendant was properly precluded from raising this contention within the context of the instant post-decree proceeding. The law applicable to such collateral attacks is stated in *Anderson v. Anderson* (1955), 4 Ill. App. 2d 330, 344, 124 N.E.2d 66, 73:

"In case of a collateral attack on a decree of a court of record, a

court of general jurisdiction, all presumptions are in favor of the validity of the decree; when acting within the scope of its authority it is presumed to have jurisdiction to enter the decree until the contrary appears; nothing is presumed to be without its jurisdiction which does not specially appear to be so; want of jurisdiction to enter the same must affirmatively appear on the face of the record to furnish a basis for collateral attack; it can be attacked collaterally only by the record itself, such cannot be shown aliunde the record, its records import verity, and the 'record' consists only of the pleadings, process, verdict, judgment or decree, and does not include the evidence, certificate of evidence, or bill of exceptions."

Examination of the record in the case at bar reveals that the matter originally came on to be heard as a contested matter upon plaintiff's complaint for divorce. To this end, defendant challenged the "jurisdiction" of the trial court to entertain plaintiff's complaint by means of a counter-complaint and a motion to strike plaintiff's complaint pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 48). Defendant's answer to plaintiff's complaint does not appear of record.[2]

■■ It does not appear that the trial court expressly ruled on defendant's motion to strike. Defendant dismissed his counterclaim and stipulated that the cause be heard as a default matter. The decree itself, however, expressly states a finding of the trial court that the parties were lawfully married in the State of Mississippi on February 3, 1964 [*sic*]. The decree is ambiguous as to whether this finding should be construed to indicate that the parties' marriage was valid at the time of the ceremony or that their marriage was subsequently validated by their cohabitation under the common law of Mississippi.[3] In any case, the instant decree is not itself void. Plaintiff's marriage to defendant was declared valid by the circuit court of Cook County. Plaintiff neither tested the correctness of

---

[2] It is incumbent upon the party appealing the judgment to bring up as much of the trial court record as is necessary to completely dispose of the issues presented on appeal. Where portions of the trial court record are lacking, it will be presumed that the trial court acted properly in the entry of the challenged order and a dismissal of the appeal under such circumstances is proper. See *Glover v. Glover* (1974), 24 Ill. App. 3d 73, 320 N.E.2d 513.

[3] The record on appeal is insufficient to permit this court to resolve this particular issue. Nor does the record establish that the trial court heard evidence in this regard. Mississippi law would hold that when a person has entered into successive marriages, a presumption arises in favor of the second or last marriage. (*Anderson-Tully Company v. Wilson* (1954), 221 Miss. 651, 74 So.2d 735.) Of course, in the instant case, plaintiff admitted that she had entered into a ceremonial marriage prior to the time she married defendant. Defendant, however, made no offer of proof to counter plaintiff's assertion that the common law of Mississippi would validate their union.

478

that ruling by appeal nor has he provided this court with the means by which to do so. (*Glover v. Glover* (1974), 24 Ill. App. 3d 73, 320 N.E.2d 513.) Consequently, plaintiff's failure to petition the trial court to vacate the divorce decree or to appeal from the entry of the decree precludes his attempt to relitigate the issue of the "jurisdiction" of the trial court to entertain plaintiff's complaint. Defendant's "marriage" to plaintiff was dissolved according to their joint desire.

■■ Defendant finally contends that the trial court's award of attorney's fees to plaintiff was excessive. However, defendant does not indicate in what manner these fees were inflated. The trial court considered an affidavit and diary notation filed by plaintiff's attorney in connection with the time spent in representing his client. We cannot say that as a matter of law the trial court abused its discretion in this regard.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.