ALLEN MARKS, Assignee of First Bank & Trust Company of Palatine, Illinois, Plaintiff-Appellant, *v.* L. C. J. CONSTRUCTION COMPANY *et al.*, Defendants.—(JOHN MINARDI, Defendant-Appellee.)

First District (4th Division)    No. 79-245

Opinion filed September 30, 1980.

Paul C. Ross, of Chicago (John F. Martoccio, of counsel), for appellant.

Malato, Stein & Grossman, of Chicago (Robert S. Minetz, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action is based upon a judgment obtained by plaintiff, First Bank & Trust Company of Palatine, Illinois (Bank), against defendants, L. C. J. Construction Company (L. C. J. Construction), Louis Capozzoli and John Minardi. Plaintiff, Allen Marks, purchased the judgment through an assignment from the judgment creditor and commenced citation proceedings against defendant Minardi. Minardi failed to appear at the citation proceedings and filed a motion to dismiss based upon the ground that the original judgment of the Bank had been satisfied by Marks' purchase of the judgment.

A hearing was held on the motion to dismiss. The court found the assignment was satisfaction of the judgment and an order was entered dismissing the citation proceedings. Plaintiff asserts in his appeal that the judgment of the trial court was not supported by the manifest weight of the evidence.

We affirm the judgment of the trial court.

In 1977, the Bank filed its complaint, based upon a promissory note, against L. C. J. Construction, Louis Capozzoli and John Minardi. The complaint was verified by Robert Smith, an attorney and agent for the Bank. Motions were filed to amend the complaint and to increase the balance due on the note and for summary judgment.

The motion for summary judgment was granted and a judgment for $16,861.61 plus costs was entered on January 30, 1978, against L. C. J. Construction, Louis Capozzoli and John Minardi.

On March 6, 1978, the Bank sold its judgment to Allen Marks and the judgment was transferred to him by assignment, executed by Robert Smith on behalf of the Bank.

Plaintiff commenced supplementary proceedings upon the judgment against Minardi by filing a citation to discover assets. Minardi filed a motion to set contrasted issues for trial and a motion to dismiss the proceedings. The motion to dismiss was based upon several grounds, including the allegation that the assignment by the Bank was a satisfaction of the judgment. It was supported by an affidavit alleging plaintiff was a personal friend of co-defendant Louis Capozzoli, and Louis' funds were used by Marks to satisfy the judgment.

Plaintiff filed a response to Minardi's motions alleging that the motions were dilatory and that Minardi was attempting to dispose of his assets.

At the hearing before the trial court, respondent admitted he had the burden of proving satisfaction of judgment as a defense. The parties stipulated that copies of all pertinent documents, including the assignment of judgment, be admitted into evidence. The court also heard the testimony of five witnesses.

Sidney Schiller testified he was an attorney practicing law in Illinois and that he had represented defendants L. C. J. Construction, Louis Capozzoli and Minardi before the judgment was entered. Schiller further testified he had personally received the assignment of judgment from Robert Smith, the attorney representing the Bank.

Vincent Barrett, assistant vice-president of the Bank, testified he was familiar with the judgment taken by the Bank against defendants. He stated he knew Smith to be one of the Bank's attorneys. Barrett testified Marks paid the Bank for the assignment of judgment.

Marks testified he was a shoe salesman. He said Louis Capozzoli and Joseph Capozzoli were brothers and partners in a retail shoe business. Marks had known both of them for 12 to 15 years. After judgment was obtained against Louis Capozzoli, Minardi and L. C. J. Construction, Joseph became concerned and expressed that concern to Marks. Marks agreed to purchase the judgment to protect the shoe business from receivership. Soon thereafter, plaintiff borrowed $16,960 from Joseph Capozzoli and his wife. The money was used to purchase the judgment. Marks testified he had no conversation with Louis Capozzoli nor did he receive any money from him for the purchase of the judgment.

Louis Capozzoli, in his testimony, confirmed that he and his brother were partners in the retail shoe business. He was aware that his brother had become upset after judgment was entered because he feared its impact on the shoe business. Included in Louis' testimony were statements that he and Minardi had been involved in a joint venture with L. C. J. Construction; the promissory note underlying the judgment represented money used to fund the construction company; and at the time of the hearing, the company was in liquidation proceedings.

Joseph Capozzoli corroborated testimony of the other witnesses and added that he had asked Marks to buy the judgment to protect the shoe business. He and his wife loaned Marks the funds which were to be used. Joseph stated his brother did not provide any of the funds nor was the matter discussed between them.

Minardi testified in support of his defense that the judgment had been satisfied out of funds belonging to Louis Capozzoli. Minardi had filed an affidavit which stated that funds of Louis Capozzoli were used to pay for the judgment. At the hearing, Minardi denied having knowledge that Louis Capozzoli paid the judgment himself.

The trial court received memoranda from both sides before entering an order finding the judgment had been satisfied and dismissing the proceedings.

Plaintiff asserts that the finding by the trial court that the judgment was satisfied is not supported by the record. We disagree.

■■ The general rule may be stated:

"[A]ctual payment of a judgment in full to a person authorized to receive it operates as a discharge of the judgment, whether the payment is made by a judgment debtor himself or by one of several judgment debtors, *or by another in his behalf.*" (Emphasis added.) 47 Am. Jur. 2d *Judgments* §992 (1969).

The key relationship in this case is that between Joseph Capozzoli, Marks and the Bank. If Joseph surrendered funds to Marks to purchase the judgment in behalf of his brother, the judgment must be considered satisfied.

Marks testified he sold shoes to the Capozzoli brothers. He had maintained a business relationship with them for approximately 15 years. Marks was also a social acquaintance of the brothers. He had never purchased a judgment before.

At the urging of Joseph Capozzoli, Marks agreed to make the purchase of the judgment. A review of Joseph's testimony clearly indicates he was acting in behalf of his brother when he made the loan to Marks. On the date of the purchase, Joseph met Marks at the Bank and handed him three checks. Marks then immediately passed on the checks with an appropriate form to complete the transaction.

Schiller, the attorney who represented Louis Capozzoli, made the actual payment to the Bank and received the assignment of judgment. Marks did not meet Schiller until 1 week before trial.

■■ The minimal involvement of Marks in the transaction depicts him merely as a strawman, without bona fide interest in obtaining the assignment of judgment. The clear intent behind the payment to the Bank was to prevent collection of a judgment from Louis Capozzoli. The best statement of the rule governing this particular fact situation was cited by the Ohio Supreme Court in the case of *Royal Indemnity Co. v. Becker* (1930), 122 Ohio St. 582, 588, 173 N.E. 194, 196. In its opinion, the court said:

" 'But one of several joint wrongdoers cannot, by paying off a judgment obtained against them all, and taking a fictitious and fraudulent assignment of the judgment in the name of a third party, enforce contribution from the other wrongdoers. In such a case no equity exists within the meaning of the rule under consideration. The same is true of a principal debtor who pays a judgment which he is bound to pay. He cannot, by obtaining an assignment of the judgment, keep it alive in order to coerce payment from his coprincipal; nor will he be permitted to accomplish the same result by indirection, in the name of another.' "

■■ We find the loan of funds to plaintiff by Joseph Capozzoli and his wife for the express purpose of purchasing the judgment was an act taken in behalf of Louis Capozzoli. The finding of the trial court that the

judgment against respondent was satisfied by the assignment is supported by the facts of this case.

In conclusion, issues of fact concerning satisfaction of judgments are best left to be resolved by the trial court. See *Russell v. Klein* (1975), 33 Ill. App. 3d 1005, 339 N.E.2d 510.

We will not disturb the judgment of the trial court unless it is against the manifest weight of the evidence. Supreme Court Rule 366(b)(1)(ii) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(1)(ii)).

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

ROMITI and JIGANTI, JJ., concur.