*In re* JEANNE ROBERTSON, f/k/a Jeanne Sollitt, Petitioner-Appellee, and ARTHUR M. SOLLITT, Respondent-Appellant.

First District (4th Division)   No. 84—2448

Opinion filed December 31, 1986.—Rehearing denied February 4, 1987.

Edward S. Richman, of Chicago, for appellant.

William A. Montgomery and Terence J. Moran, both of Schiff, Hardin & Waite, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Petitioner, Jeanne Robertson (Jeanne), formerly known as Jeanne Sollitt, filed a petition to revive a 1970 judgment against Arthur Sollitt (Arthur), her former husband, for past-due child support. The trial court allowed Jeanne's petition and entered a consolidated judgment against Arthur in the amount of $124,852.35. The court also awarded

Jeanne $19,875.26 in attorney fees. Arthur appeals and the following issues are presented for our review:

(1) whether the 1965 divorce decree validly asserted subject matter jurisdiction over the marriage and personal jurisdiction over Arthur;

(2) whether Arthur's remarriages estop him from denying the court's subject matter and personal jurisdiction over him to enter the decree of divorce and to order child support;

(3) whether Jeanne's failure to file a contemporaneous affidavit of service for the 1983 petition to revive judgment rendered the service invalid;

(4) whether payments to the parties' twin children by their paternal grandmother's testamentary trust should have been credited against Arthur's child-support arrearage;

(5) whether the attorney fee award entered against Arthur was improper or excessive.

We affirm.

BACKGROUND

I. THE 1964-1965 DIVORCE PROCEEDINGS

Arthur and Jeanne were married November 9, 1957, in Kenilworth, Illinois, and twin sons were born to the parties during their marriage. Arthur left Jeanne and the Cook County marital residence on August 14, 1962, and for over a year thereafter she did not know his whereabouts. At the end of 1963, Jeanne located him in St. Thomas, Virgin Islands. She filed a complaint for separate maintenance on April 8, 1964. Arthur was served personally with summons and a copy of the complaint in Chicago during a brief visit he made to Chicago to attend his father's funeral.

After Arthur returned to Puerto Rico where he had been living, he and Jeanne attempted a reconciliation. The parties entered into an agreed order and a stipulation that permitted them to live together without prejudice to any of their rights. Arthur signed the agreed reconciliation order, as well as a stipulation to the parties' living together without condonation, while he was in Puerto Rico. The documents were presented to and accepted by the court, which entered the order in August 1964. Although Jeanne joined Arthur in San Juan, Puerto Rico, for five weeks, the reconciliation was unsuccessful. Jeanne and Arthur have not lived together since September 1964.

Jeanne's separate-maintenance complaint was dismissed for want of prosecution on December 1, 1964. Jeanne filed a timely motion to

vacate the dismissal and sent Arthur notice thereof by regular mail. An affidavit that notice of the motion was mailed to Arthur was filed with the court on December 24, 1964.

After the circuit court vacated the dismissal and reinstated Jeanne's complaint for separate maintenance, Jeanne moved to terminate the 1964 reconciliation order and for leave to file an amended complaint. She sent Arthur notice of these motions by regular mail to his residence and place of employment in Puerto Rico on January 19, 1965. The court granted both motions, and Jeanne filed her amended complaint for divorce on January 29, 1965. Arthur now denies that he ever received notice of the motion to reinstate the complaint for separate maintenance and the motion to file the amended complaint for divorce.

On March 3, 1965, the circuit court entered an order of default against Arthur for his failure to appear or plead and held an evidentiary hearing on Jeanne's amended complaint for divorce. Based upon Jeanne's testimony regarding Arthur's desertion in 1962 and his then current financial circumstances, the court entered a decree for divorce on April 19, 1966. The decree awarded custody of the children to Jeanne and ordered Arthur to pay $125 a week for child support and $500 in attorney fees.

In 1968, Arthur remarried and had two children by this second marriage. He and his second wife were divorced in 1974. Subsequently, Arthur again remarried.

## II. THE 1970 ENFORCEMENT PROCEEDINGS

On May 11, 1970, Jeanne filed a motion for entry of judgment in the amount of unpaid child support plus attorney fees. Jeanne sent Arthur notice of the motion, by regular mail, to both his Virgin Island address and a Caracas, Venezuela, address supplied by Arthur's brother, Sumner Sollitt (Sumner). On May 11, 1970, the circuit court found Arthur in arrears in his child-support payments and entered an arrearage judgment against Arthur in the amount of $34,750. It also allowed Jeanne attorney fees in the amount of $1,000.

Jeanne proceeded to collect the 1970 arrearage judgment by initiating citation proceedings against the estate of Louise Sollitt (Louise), Arthur's mother, who had died on November 8, 1969. In her will, Louise bequeathed to Arthur some jewelry and savings bonds. Pursuant to Jeanne's request, the court directed Sumner, the co-executor of Louise's estate, to transfer to Jeanne the bonds bequeathed to Arthur by his mother. Jeanne received $8,101.36 in partial satisfaction of the 1970 arrearage judgment. Arthur failed to appear or object to the ar-

rearage judgment, the allowance of attorney fees to Jeanne, or to the use of bequests made to Arthur by his mother in partial satisfaction of the 1970 arrearage judgment.

Louise had also established a discretionary testamentary trust which allowed the trustees to pay the trust income to or on behalf of her children or grandchildren. In the years following Louise's death, her testamentary trust disbursed over $32,500 to the children of Arthur and Jeanne or their mother for their support up to and past their attainment of majority.

### III. THE 1983-1984 ENFORCEMENT PROCEEDINGS

Jeanne filed a petition to revive the 1970 arrearage judgment on October 28, 1983. On December 8, 1983, Arthur filed a motion for leave to file a special and limited appearance contesting the personal jurisdiction of the court. He also filed motions to attack the validity of the judgments previously entered against him.

The first motion sought to vacate all orders entered on and after the December 23, 1964, order vacating dismissal of Jeanne's complaint for separate maintenance. He claimed that these proceedings violated due process because Jeanne gave him inadequate notice of any of the proceedings which occurred on or after December 23, 1964. Arthur also requested that the court vacate any *in personam* orders entered during the year 1964 or after, alleging that such orders were void for lack of personal jurisdiction over him.

In another motion, Arthur requested the court to quash Jeanne's 1983 petition to revive judgment, on the ground that the return of service had not been contemporaneously filed with the clerk of the court. Following a hearing, the court denied Arthur leave to file a special appearance, denied his motion to quash, and denied his motion to vacate any previous *in personam* orders.

In his response to Jeanne's petition to revive judgment, Arthur asserted satisfaction of the judgment as an affirmative defense. He argued that the trustees of Louise's testamentary trust paid over $32,500 to Jeanne and the twin boys for the children's support on his behalf with the intent of satisfying his child-support obligation. On this basis, he requested judgment on the pleadings. After an evidentiary hearing to determine the amount of Arthur's child-support obligation, the trial court denied Arthur's motion for judgment on the pleadings. Both parties then submitted their calculations of the statutory interest due. The court entered a consolidated judgment in Jeanne's favor in the amount of $124,852.35, including accrued interest. Arthur subsequently filed a timely motion for reconsideration.

Jeanne filed a petition for attorney fees. Following a hearing, the court denied Arthur's motion, awarded Jeanne $19,875.26 in attorney fees, and entered judgment in that amount against Arthur. Arthur appeals from the consolidated judgment for past-due child support, the court's denial of his motion for reconsideration, and its attorney fee award.

OPINION

I

■■ Arthur argues that the court acted without jurisdiction over the subject matter and without jurisdiction over his person in the 1964-65 divorce proceedings. Arthur's challenge of the court's subject matter jurisdiction is based on Jeanne's failure to properly allege venue in her complaint for separate maintenance and support. Under section 23 of "An Act in relation to married men and women" (the Husband and Wife Act) in effect at the time the complaint was filed, the court's divorce decree would be void for lack of jurisdiction if Cook County was neither the county of Arthur's residence upon the commencement of the suit, nor the county of his residence at the time of his desertion of Jeanne and their children. (See Ill. Rev. Stat. 1963, ch. 68, par. 23.) Jeanne testified at the hearing with respect to her complaint for divorce that she had lived in Cook County all of her life. Because this uncontroverted evidence indicates that Arthur and Jeanne lived in Cook County at the time of his desertion of her, Jeanne's failure to properly allege venue did not deprive the court of subject matter jurisdiction over Jeanne's complaint. See *Kijowski v. Kijowski* (1962), 36 Ill. App. 2d 94, 96, 183 N.E.2d 583, 584; *Lemons v. Lemons* (1978), 57 Ill. App. 3d 473, 476, 373 N.E.2d 544.

Arthur also claims that the court lacked the personal jurisdiction necessary to enter the child-support portion of the divorce decree or any other *in personam* orders prior to the time he filed his first formal appearance in 1983. Although he admits that he was personally served with summons in April 1964 and that he signed the 1964 reconciliation order and stipulation, he contends that his signature on the reconciliation order and stipulation amounted to neither a general appearance nor a waiver of his objection to the court's jurisdiction.

■■ ■ Before the court can impose an affirmative obligation, such as the duty to pay child support, it must first possess and assert personal jurisdiction over that person. (*In re Marriage of Hostetler* (1984), 124 Ill. App. 3d 31, 34, 463 N.E.2d 955; *In re Marriage of Schuham* (1983), 120 Ill. App. 3d 339, 343, 458 N.E.2d 559; see also

*Galvin v. Galvin* (1978), 72 Ill. 2d 113, 119, 378 N.E.2d 510.) "[S]ervice of process on a nonresident person who is physically present in the State, albeit briefly, is a sufficient basis for *in personam* jurisdiction." (*In re Marriage of Pridemore* (1986), 146 Ill. App. 3d 990, 992, 497 N.E.2d 818, 820; see also *In re Marriage of Hostetler* (1984), 124 Ill. App. 3d 31, 33, 463 N.E.2d 955.) Moreover, it is well established that a stipulation constitutes a general appearance (*People v. Estep* (1955), 6 Ill. 2d 127, 128, 126 N.E.2d 637; *Tagert v. Fletcher* (1908), 232 Ill. 197, 198-99, 83 N.E. 805; *cf. Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 468, 461 N.E.2d 564) and, in particular, that a stipulation to a trial reconciliation between a separated couple is a general appearance (*McKnelly v. McKnelly* (1976), 38 Ill. App. 3d 637, 639, 348 N.E.2d 500, *appeal denied* (1976), 63 Ill. 2d 557).

██ Jeanne's 1964 service of summons on the defendant while he was in Chicago was sufficient basis for *in personam* jurisdiction. His signature to the agreed reconciliation order and stipulation amounted to a general appearance. By invoking the court's exercise of judicial discretion to enter the agreed order, Arthur thereby submitted himself to the jurisdiction of the court. "[A] person cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists." *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77, 80.

Arthur also contends that insufficient notice to him renders void the January 1965 orders which reinstated Jeanne's complaint for separate maintenance and allowed Jeanne to file an amended complaint for divorce. Arthur argues that he had been in default 30 days after he failed to answer the summons served upon him on April 8, 1964. He maintains that after the expiration of 30 days from the date of service of summons upon him, Supreme Court Rule 105 required Jeanne to give him 30-day registered-mail notice and that the regular mail notice she gave was therefore insufficient. 87 Ill. 2d R. 105(a).

If Arthur was a party entitled to notice under Rule 104, then the 30-day registered notice requirement of Rule 105 was not applicable. Rule 104 regular mail notice was appropriate and sufficient if Arthur had appeared and "not theretofore been found by the court to be in default for failure to plead." 87 Ill. 2d R. 104(b).

Rule 105 requires 30-day registered-mail notice "[i]f new or additional relief *** by amendment *** is sought against a party not entitled to notice under Rule 104." (87 Ill. 2d R. 105(a).) The rule is an exception to the general standard which permits regular mail notice of motions to a party who has appeared and "not theretofore been found by the court to be in default for failure to plead." (87 Ill. 2d R.

104(b); see also 87 Ill. 2d R. 11.) Without reaching the issue of whether the 1965 amended complaint for divorce was a request for new and additional relief, we conclude that Arthur was a "party entitled to notice under Rule 104" and not under Rule 105. 87 Ill. 2d R. 105(a); see also *In re Marriage of Ponsart* (1983), 118 Ill. App. 3d 664, 667, 455 N.E.2d 271.

■ Although Arthur may have been in default for his failure to appear or plead 30 days after the service of summons upon him, his being in default did not, in and of itself, satisfy the requirement of Rule 104 that the court make a finding that he was in default. In fact, the court found Arthur in default on March 3, 1965, more than two months after the motion to reinstate the complaint for separate maintenance was filed and over a month after the amended complaint for divorce was filed. When the executed 1964 reconciliation order and stipulation were filed, Arthur became a party who had "appeared." (87 Ill. 2d R. 104(b); see also *Difanis v. Martin-Trigona* (1979), 73 Ill. App. 3d 352, 355, 391 N.E.2d 1067.) He had "not therefore been *found by the court to be in default* for failure to plead." (Emphasis added.) (87 Ill. 2d R. 104(b).) Because Arthur had made an appearance and the court had not found him in default, Jeanne's regular mail notice to Arthur of her motions to reinstate her complaint and to amend her complaint was sufficient. See *In re Marriage of Ponsart* (1983), 118 Ill. App. 3d 664, 667, 455 N.E.2d 271; *cf. Albany Bank & Trust Co. v. Albany Bank & Trust Co.* (1986), 142 Ill. App. 3d 390, 393, 491 N.E.2d 1234, 1236.

## II

While Arthur's jurisdictional challenges to the 1964 decree fail on their own merits, we agree with Jeanne's assertion that the doctrine of estoppel by remarriage is also dispositive of these issues.

■ Illinois courts have regarded with circumspection jurisdictional claims by a party who has remarried in reliance on the validity of the decree which he later argues to be void. Thus it has often been held that one who accepts any of the benefits of a divorce decree, including the right to remarry, is estopped from challenging the jurisdiction of the court over either the person or the subject matter of the decree. (*Grimm v. Grimm* (1922), 302 Ill. 511, 514, 135 N.E. 19 (subject matter jurisdiction); *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 634, 494 N.E.2d 541, *appeal denied* (1986), 113 Ill. 2d 30 (subject matter jurisdiction); *Pierotti v. Pierotti* (1951), 343 Ill. App. 116, 131, 98 N.E.2d 875 (personal jurisdiction); see also *In re Mar-*

*riage of Paulius* (1985), 131 Ill. App. 3d 343, 348, 475 N.E.2d 1006, 1010, *appeal denied* (1985), 106 Ill. 2d 556 (attributing the legal origin of estoppel by remarriage to a "commingl[ing]" of concepts of equitable estoppel and ratification).) " '[T]he rule is well and generally settled that one who accepts the benefits and privileges of a divorce decree by a remarriage, even though *the decree be void for want of jurisdiction*, is estopped from thereafter assailing such decree. [Citations.]' " (Emphasis added.) *Pierotti v. Pierotti* (1951), 343 Ill. App. 116, 131, 98 N.E.2d 875, 882, quoting *Cummings v. Huddleston* (1924), 99 Okla. 195, 196, 226 P. 104, 105; see also *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 634, 494 N.E.2d 541.

■ We find estoppel appropriate in the instant case. Arthur knew of the decree. He did not contest its validity by a motion to vacate or a direct appeal, but instead remarried twice in apparent reliance on the decree. (See *Levy v. Dickstein* (1979), 70 Ill. App. 3d 180, 184, 388 N.E.2d 97; *Lemons v. Lemons* (1978), 57 Ill. App. 3d 473, 477-78, 373 N.E.2d 544.) Almost 20 years after the entry of the decree, he now attempts to challenge it for the first time by collateral attack. However, Arthur's remarriages estop him from questioning the court's jurisdiction. See *Grimm v. Grimm* (1922), 302 Ill. 511, 514, 135 N.E. 19; *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 634, 494 N.E.2d 541; *In re Marriage of Paulius* (1985), 131 Ill. App. 3d 343, 348, 475 N.E.2d 1006; *In re Marriage of Gryka* (1980), 90 Ill. App. 3d 443, 446, 413 N.E.2d 153, *appeal denied* (1981), 83 Ill. 2d 570; *Pierotti v. Pierotti* (1951), 343 Ill. App. 116, 98 N.E.2d 875.

### III

In this appeal, Arthur does not question the 1970 arrearage judgment entered against him in the amount of $34,750 or the 1970 allowance of attorney fees in the amount of $1,000. While Arthur admits that he was personally served on November 8, 1983, with the petition to revive judgment, he claims that no return of service was filed contemporaneously with the court and that therefore service was invalid. He argues that the trial court erred in failing to grant his motion to quash the November 1983 service of summons.

■ Arthur's assertion is in error. Illinois Supreme Court Rule 102(d) provides that "[f]ailure of the officer or other person to return the summons or file proof of service does not invalidate the summons or the service thereof, if had." (87 Ill. 2d R. 102(d).) We conclude that even if Jeanne failed to file a proof of service "immediately" after service in accordance with Rule 102(d), the trial court properly denied Arthur's motion to quash. 87 Ill. 2d R. 102(d); see also *State Bank of*

*Lake Zurich v. Thill* (1986), 113 Ill. 2d 294, 312, 497 N.E.2d 1156; *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 636, 494 N.E.2d 541.

Arthur's reliance upon *Wells v. Braxton* (1967), 82 Ill. App. 2d 354, 227 N.E.2d 137, is misplaced. In *Wells*, there was neither an affidavit nor anything "of sufficient merit to allow the court to conclude that [the defendant] had been properly served." (82 Ill. App. 2d 354, 363, 227 N.E.2d 137, 142.) Here, in contrast, it is uncontested that Arthur was properly served and that an affidavit was filed, eventually if not contemporaneously, showing the time, place, and manner of service.

## IV

Arthur maintains that the trial court erred in its refusal to credit against his child-support obligation money paid for the support of the children by his mother's testamentary trust. He claims in this regard that the court erred in its denial of his motion for judgment on the pleadings and entry of judgment against him. He also contends that trial court erred in entering judgment on Jeanne's 1983 petition for the revival of judgment because Jeanne introduced no testimonial evidence.

Arthur requested judgment in his favor on his affirmative defense of satisfaction of the judgment. In support of his alleged affirmative defense, Arthur argued that the payments by his mother's testamentary trust were made on his behalf and should be credited towards his child-support obligation. Arthur claims that these payments by the trust were intended by the trustees as payments on his behalf to satisfy his child-support obligation. Because the intent of the trustees was a disputed factual question (*cf.* 47 Am. Jur. 2d *Judgments* sec. 992 (1977)), the trial court correctly denied Arthur's motion for judgment on the pleadings. See *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d 113; *Patel v. Dunkin' Donuts of America, Inc.* (1986), 146 Ill. App. 3d 233, 235, 496 N.E.2d 1159.

▪ Arthur also argues that the trial court erred in the entry of judgment against him because he proved subsequent satisfaction of the 1970 support arrearages judgment, which was an affirmative defense. (See *Bank of Edwardsville v. Raffaelle* (1942), 381 Ill. 486, 489, 45 N.E.2d 651; *A. A. Store Fixture Co. v. Kouzoukas* (1980), 87 Ill. App. 3d 631, 636, 410 N.E.2d 131.) Based on our review of the record, however, we cannot conclude that the trial court's entry of the 1984 consolidated judgment in Jeanne's favor was against the manifest weight of the evidence. The evidence shows that the children

were the designated beneficiaries of the testamentary trust created by Louise's will to whom the trustees, within the discretion allowed them under the trust, made voluntary payments. Nothing introduced by either Arthur or Jeanne establishes that the trustees made the payments in *behalf of Arthur* or that they intended to satisfy his child-support obligation. Furthermore, because the burden rested on Arthur to prove satisfaction of the judgment, Jeanne's failure to present testimonial evidence to prove Arthur's nonpayment is not a ground for reversal. As a result, the trial court correctly found that the payments made by the discretionary trust to Jeanne and the children were not made on behalf of Arthur.

Arthur incorrectly relies on *Marks v. L.C.J. Construction Co.* (1980), 89 Ill. App. 3d 418, 421, 411 N.E.2d 1027, 1029 (quoting 47 Am. Jur. 2d *Judgments* sec. 992 (1969)), wherein the court observed, " '[A]ctual payment of a judgment in full to a person authorized to receive it operates as a discharge of the judgment, whether the payment is made by a judgment debtor himself *** *or by another in his behalf.*' " (Emphasis in original.) The testimony in *Marks* by the judgment debtor's brother, who arranged for the purchase of the judgment, "clearly indicate[d] he was acting in behalf of his brother." (89 Ill. App. 3d 418, 421, 411 N.E.2d 1027, 1030). There is no equivalent showing in the record here.

## V

■■■ Arthur raises several objections to the 1984 award of attorney fees. He claims first that the trial court's order was against the manifest weight of the evidence. The Illinois Marriage and Dissolution of Marriage Act provides that awards of attorney fees "shall" be granted in the enforcement of child support decrees where the failure to pay was "without cause or justification." (Ill. Rev. Stat. 1985, ch. 40, par. 508(b).) The trial court explicitly found that Arthur's failure to pay support was without cause or justification. Upon such a finding, section 508(b) mandates an award of attorney fees. (Ill. Rev. Stat. 1985, ch. 40, par. 508(b); *Faris v. Faris* (1986), 142 Ill. App. 3d 987, 1003, 492 N.E.2d 645, *appeal denied* (1986), 113 Ill. 2d 572; *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 280, 484 N.E.2d 482.) Based upon our review of the record, we cannot say that the trial court's determination was against the manifest weight of the evidence.

Arthur also complains that the court's award of fees was improper because the trial court made no finding with regard to the relative financial abilities of the parties to pay attorney fees. It is well established in Illinois that "a party who must use judicial process to

enforce rights under \*\*\* a divorce judgment is entitled to reasonable attorney fees, even absent a showing of the party's inability to pay. [Citation.]" (*In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 900, 478 N.E.2d 537, 540; see also *Walters v. Walters* (1951), 409 Ill. 298, 305, 99 N.E.2d 342; *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 639, 494 N.E.2d 541, *appeal denied* (1986), 113 Ill. 2d 30.) Consequently, no finding of Jeanne's financial circumstances was necessary by the court in order to award her attorney fees.

■■ Lastly, Arthur challenges the amount of the fee award as excessive. "The allowance of attorney fees is a discretionary matter which will not be disturbed on review absent a clear abuse of discretion. [Citation.]" (*In re Marriage of Savas* (1985), 139 Ill. App. 3d 68, 77, 486 N.E.2d 1318, 1325.) Considering that Jeanne's efforts to enforce the court's decrees spanned almost two decades and that Arthur has vigorously contested every issue, we cannot find that the court's fee award was a clear abuse of discretion. See *In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 900, 478 N.E.2d 537; *cf. In re Marriage of Brand* (1984), 123 Ill. App. 3d 1047, 1050, 463 N.E.2d 1037, *appeal denied* (1984), 101 Ill. 2d 563.

For the reasons stated above, the judgment and orders of the circuit court of Cook County are affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.