*In re* MARRIAGE OF SUSAN NEWBERRY, Petitioner-Appellant, and DAVID NEWBERRY, Respondent-Appellee.

Third District   No. 3—03—0360

Opinion filed February 20, 2004.

Jeffrey J. Neppl, of Neppl Law Firm, Ltd., of Rock Island, for appellant.

David L. Newberry, of Rock Island, appellee *pro se.*

JUSTICE SLATER delivered the opinion of the court:

Petitioner Susan Newberry appeals from orders entered by the circuit court of Rock Island County modifying child support and denying her motion to reconsider. The issues on appeal are whether the court (1) improperly gave respondent David Newberry credit for an adoption subsidy paid by the State of Iowa for the support of three of the parties' minor children; (2) improperly refused to include income from David's second job in determining the amount of his net income available for support; and (3) should have given Susan credit for the cost of the children's health insurance. We affirm.

## FACTS

The record shows that the parties' marriage was dissolved in Scott County, Iowa, on June 23, 1997. At the time of their divorce, the parties had five children. The three younger children were adoptees for whom the State of Iowa paid a monthly subsidy. An amended divorce decree entered September 24, 1997, contained the following provisions relevant to this appeal:

> "4. Petitioner receives from the state of Iowa the sum of approximately $1,450.00 per month as and for the support of the three minor children adopted by the parties. This Court finds that based on the payment of this separate support for the minor children that it is just and equitable for the Court to deviate from the Child Support Guidelines in calculating Respondent's child support obligation. Respondent's obligation shall be based on the two children, Claire and Margaret, and excluding the three children, Andrew, David, and Kristen, for whom separate support is received."

The Iowa court ordered David to pay $401.43 bimonthly in child support and ordered Susan to provide medical, dental and hospital insurance for the children.

On May 30, 2002, Susan filed a petition in the circuit court of Rock Island County stating that both parties had moved to Illinois. She requested the court to register the Iowa decree and assume jurisdiction over the parties and subject matter of the Iowa judgment. The court granted the petition in an agreed order of June 11. On October 11, 2002, Susan filed a petition to modify child support, claiming that both the expenses of the children and David's income had increased substantially.[1]

The circuit court subsequently entered an order, relevant portions of which follow:

"Petitioner registered the Iowa judgment and now seeks to modify the support order according to Illinois guidelines. Specifically, she seeks support based on five children, or 45% of respondent's net income. She still receives the monthly benefit from Iowa, now about $1,700, but argues respondent should not now receive any credit for that benefit. The court notes that the work-related incomes of both parties are relatively close.

*** The parties agree that respondent has net income for Illinois child support purposes, of $1,608.77 bi-monthly. Under the guidelines, 45% is $726.60, and 25% is $402.20. Thus, the question: what amount of child support is appropriate?

As indicated, no Illinois case addresses this issue. *In re Marriage of Henry*, 156 Ill. 2d 541 (1993), *** held that Social Security *** benefits are based upon the earnings of the recipient, and a benefit received *** by recipient/payor spouse's dependent satisfied the payor's support obligation.

On the other end of the spectrum is *In re the Marriage of Robertson*, 151 Ill. App. 3d 214 (1st Dist. 1986), which held that voluntary payments to payor's children, from his mother's testamentary trust, should not be credited against his child support obligation.

The payment from the State of Iowa in this case is somewhere between gratuitous and an earned benefit. Without question, however, it is a benefit generated by both parents' willingness to adopt these children and the purpose of it is to help support them. In this posture, credit for it should be given to respondent when setting his support in this State.

The court finds that the Iowa benefit satisfies respondent's support obligation to those three children. Accordingly, support is set at 25% of his net income, which results in $402.20 bi-monthly."

---

[1] It appears that the cause was heard on December 18, 2002; however, no transcript of the proceedings is included in the record on appeal.

Susan filed a motion to reconsider. Following a hearing, the court ordered David to prepare a qualified medical support order (QMSO) and otherwise denied the motion. Susan appeals.

## ISSUES AND ANALYSIS

### 1. Treatment of Iowa Adoption Subsidy

Initially, we consider Susan's argument that the trial court improperly gave David credit for the Iowa adoption subsidy. She contends that the court should have given no credit at all; or, in the alternative, the court should have considered 50% of the subsidies as a credit against David's obligation; or, as another alternative, the court should have credited the subsidies based on time spent with the children. We are unaware of any reported Illinois decisions that have addressed the treatment of adoption subsidies in calculating child support. However, the issue has received judicial attention in sister jurisdictions. See, *e.g.*, *Hamblen v. Hamblen*, 203 Ariz. 342, 54 P.3d 371 (2002); *Strandberg v. Strandberg*, 664 N.W.2d 887 (Minn. App. 2003). While not controlling, these decisions appear to be well reasoned, and they provide some guidance in resolving the issue here.

In *Hamblen*, the parties adopted five "special needs" children during their marriage. At the time of their divorce, the Hamblens were being paid state adoption subsidies of $671 per month per child. The trial court ruled that the subsidies would be treated as income to the children which, by Arizona statutory guidelines, did not relieve a parent of his support obligation. The court therefore excluded the subsidies from the child-support calculation. *Hamblen*, 203 Ariz. 342, 54 P.3d 371.

On appeal, the Arizona reviewing court considered the payor-father's argument that the subsidy belonged to the parents and could be used to reduce child support in the same manner as wage-based social security benefits. The court observed that, unlike social security benefits which replaced lost parental income, the adoption subsidy was for the direct benefit of the adopted child. The court reasoned that crediting the adoption subsidy against a parent's child-support obligation would practically eliminate the supplementary effect of the subsidy. A direct credit, the court noted, would place the children in a worse position than children without special needs and potentially deter prospective parents from adopting special-needs children. Therefore, rejecting the father's arguments, the court affirmed the trial court and ruled that the subsidy was income attributable to the children. *Hamblen*, 203 Ariz. 342, 54 P.3d 371.

In *Strandberg*, the parties had one adopted child for whom the State of Minnesota paid subsidies to the custodial mother after the

parties' divorce in amounts ranging from $397 to $427 per month. The district court ruled that the subsidies could not be considered in determining child support and ordered the payor father to pay child support pursuant to statutory support guidelines.

On appeal, the father argued that the district court abused its discretion in refusing to grant a downward deviation from the guidelines. The reviewing court agreed. The court found that the district court's ruling conflicted with Minnesota's statutory requirement that the "financial needs and resources" of the child be considered in setting support. Because the adoption subsidy was a resource available for meeting the child's needs, the court reasoned, it was error not to factor the subsidy into the child support determination. *Strandberg*, 664 N.W.2d 887.

Although the results of *Hamblen* and *Strandberg* may appear to be at odds with each other, both courts treated adoption subsidies as benefits belonging to the children, not the parents. We agree that adoption subsidies should be so treated in this state.

■ The Illinois statute governing child support generally requires a noncustodial parent to pay a minimum of 45% of his net income for five children. 750 ILCS 5/505(a)(1) (West 2002). However, a deviation from the statutory guideline is permitted if the court finds that the support so determined would be inappropriate based on, *inter alia*, the financial resources and needs of the child. 750 ILCS 5/505(a)(2) (West 2002). The trial court in this case did not consider its decision a "deviation under the statute." Nevertheless, the court's order on its face demonstrates compliance with Illinois's statutory mandate to make findings to support a downward deviation in the amount of a noncustodial parent's child support obligation. See 750 ILCS 5/505(a)(2) (West 2002).

■ Turning to Susan's arguments in this appeal, we initially consider her proposal that the adoption subsidies are tantamount to "voluntary payments" and should be excluded from the calculation of David's child support obligation. See *In re Robertson*, 151 Ill. App. 3d 214, 502 N.E.2d 1279 (1986). In *Robertson*, the parties' children were the designated beneficiaries of a testamentary trust left by their grandmother, the payor-father's mother. At trial, the father argued, but did not prove, that payments made by the trustees to the children were intended as payments in lieu of child support. The trial court ruled, lacking evidence to the contrary, that the payments were gratuitous and declined to give the father credit for them. On appeal, the court affirmed, holding that there was no evidence to demonstrate the payments were not voluntary. *Robertson*, 151 Ill. App. 3d 214, 502 N.E.2d 1279.

Unlike *Robertson*, the trial court in this case found that the purpose of the subsidies was to supplement support for the three adopted children. As such, the payments are not the same as "voluntary" benefits, and they may be factored into the calculation of the support award. See *Strandberg*, 664 N.W.2d 887.

Next, we note that Susan offers no legal support for her alternative proposal giving David a 50% credit for the adoption subsidies. To the extent that such a formula may have been proposed at trial, we hold that it was properly rejected, because the proposed formula lacks any logical relationship to the source or purpose of the subsidies.

We also reject the second alternative that Susan proposes without legal authority—*i.e.*, that the court should have granted a credit to David based on visitation. Relating a parent's child support obligation to visitation is inconsistent with the support statute, which bases support primarily on the financial resources and needs of the parents and the child. See 750 ILCS 5/505 (West 2000).

In our opinion, the circuit court's treatment of the Iowa adoption subsidies properly recognized them as resources of the children available for their support. See *Strandberg*, 664 N.W.2d 887. Considering that the amount of the parties' net income is approximately equal, and the amount of the subsidies paid for three of the children is proportionately greater than their share of an unallocated 45% of David's income, we cannot say that the court erred in granting credit against David's support obligation. The $804.40-per-month award determined by reducing the percentage of David's net income to be paid for child support appears to blend the children's needs with what is fair and what is workable. See *In re Marriage of Rogers*, 283 Ill. App. 3d 719, 670 N.E.2d 1154 (1996), citing *Lemon v. Kurtzman*, 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973). We conclude that the court did not err in its treatment of the adoption subsidies.

## 2. Other Issues

■ Susan also argues that the trial court erred in calculating David's net income and in failing to consider her contribution to the children's health care insurance. Both of these issues concern factual determinations which cannot be reviewed based on the record before us.

It is the appellant's burden to provide an adequate record for review of issues on appeal. See *Davis v. Allstate Insurance Co.*, 147 Ill. App. 3d 581, 498 N.E.2d 246 (1986). Where the record is inadequate, we presume that the trial court's judgment conformed with the law and facts and was not an abuse of discretion. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 459 N.E.2d 958 (1984).

The record before us contains neither a transcript of the hearing on Susan's petition to modify nor a bystander's report. We cannot tell what, if any, evidence the court considered with regard to the additional income Susan claims David earns or with regard to the parties' insurance obligations. We note only that the trial court's order indicates that the parties stipulated to the amount of David's income and that the court granted Susan a QMSO in response to her motion to reconsider. Based on the record, we presume that the trial court did not abuse its discretion in setting the amount of David's support obligation. See *Foutch*, 99 Ill. 2d 389, 459 N.E.2d 958.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

HOLDRIDGE, P.J., and BARRY, J., concur.