MITCHELL J. MAZANEK, Plaintiff-Appellee, *v.* ROCKFORD DROP FORGE CO., Defendant and Third-Party Plaintiff-Appellant.—(GENERAL ELECTRIC COMPANY *et al.*, Third-Party Defendant-Appellee.)

Second District   No. 79-523

Opinion filed August 4, 1981.

Alfred Cowan, of Brassfield, Cowan and Howard, of Rockford, for appellant.

Peter DeBruyne, of Miller, Hickey & DeBruyne, of Rockford, and James J. Reidy and Edward J. Egan, both of Chicago, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Mitchell Mazanek, commenced this action against defendant and third-party plaintiff Rockford Drop Forge Co. (Rockford) to recover damages for injuries sustained on July 13, 1973, in an electrical fire at Rockford's plant. Rockford filed a third-party action for indemnity against the third-party defendants, General Electric Company and General Electric Supply Company. During the trial, plaintiff entered into an "indemnification" agreement with General Electric Supply Company (GE) for which he received $100,000. The Circuit Court of Winnebago County entered judgment upon a jury verdict in the amount of $540,000 against Rockford in favor of plaintiff. The jury also found that Rockford was entitled to reimbursement from GE, but limited the amount to $2,712.22. Rockford appeals from both judgments.

The relevant facts include events 10 years prior to the date of the occurrence. The instrumentality which caused plaintiff's injuries is an electrical switchboard which was purchased by defendant, third-party plaintiff Rockford Drop Forge Company from third-party defendant General Electric Company in 1962 and installed at Rockford in 1963. The accompanying product manual recommended annual cleaning of the machine and the National Electric Code provided that a switchboard should not be located where contamination by foreign particles, such as metal dust or corrosives, could accumulate in the switchboard. The evidence showed that neither safety precaution had been taken: the machine, located near storage for slag metal parts, had not been cleaned in 10 years at the time of the occurrence. The danger is that conductive contaminants will divert the electricity from its proper path and generate heat which could result in fire, an occurrence known as the creation of an arc.

In 1973, Rockford requested that GE service and clean the switchboard. GE replied with its own form entitled "Customer Acknowledgement" which corresponded verbatim with Rockford's service request. At the bottom of the form was the statement that the agreement was subject to the terms printed on the back. At the top of the reverse side of the form was the heading: "STANDARD TERMS AND CONDITIONS APPLYING TO ALL SALES." Indented below the heading was a paragraph beginning "All sales of material or equipment by General Electric Supply Company are expressly conditioned upon the terms and conditions set forth below." One of the terms and conditions was labeled *"LIMITATION OF LIABILITY"* and it stated: "GESCO's liability on any claim for loss or damage arising out of this contract or from the performance or breach thereof or connected with the supplying of material or equipment hereunder, or its sale, resale, operation or use, whether based on warranty, contract, negligence or other grounds, shall not exceed the price allowable to such material or equipment or part thereof involved in the claim."

A GE crew arrived at Rockford on the requested date and was met by Rockford employees and directed to the switchboard. The switchboard was "energized" when the GE crew arrived and they were told that the machine would continue to operate so that it could be partially cleaned by the GE crew. Plaintiff commenced brushing dust and contaminants off the part of the machine furthest from the power source. There was an explosion and fire in which plaintiff suffered severe injuries. In January of 1974, GE presented and Rockford paid a bill of $2,721.22 for the services rendered. Plaintiff filed suit against Rockford, alleging that it negligently failed to take adequate safety precautions to prevent the creation of an arc. Rockford sued General Electric Company and General Electric Supply Company for design defects and negligence and demanded indemnification.

At the close of the evidence, the plaintiff and GE entered into what was termed an indemnity agreement wherein plaintiff received $100,000. That amount was apportioned as $35,000 in settlement of any Workmen's Compensation claim plaintiff had against GE and $65,000 for plaintiff's promise to indemnify GE and further not to execute upon any judgment against Rockford which Rockford might in turn enforce against GE. The case was submitted to the jury, which returned a verdict of $540,000 against Rockford and found that Rockford was entitled to reimbursement from GE but only in the amount of $2,721.22. Rockford appeals.

I

■■ Rockford argues that the question of whether the "Limitation of Liability," included on the back of GE's customer acknowledgment form,

applied to a service contract though its terms referred to contracts for the sale of goods was improperly submitted to the jury and should have been decided by the trial court as a matter of law. The plaintiff and GE, however, argue that Rockford waived review of this issue by reason of argument it made in opposition to GE's motion for a directed verdict. At that time Rockford's attorney stated that the issue of the effect of the limitation of liability should be decided by the jury. The general rule is that where a question of law is submitted to the jury at the request of a party that party cannot complain if the jury resolved the issue against it. (*Ahlvers v. Terminal Railroad Association* (1975), 31 Ill. App. 3d 166, 334 N.E.2d 329.) Rockford's statement, however, did not constitute a waiver of the contract issue in this case for the reason that Rockford had made a motion to strike GE's affirmative defense which was based upon the limitation of liability clause, albeit several years before trial. Rockford pointed out in its motion that the limitation applied to sales of material or equipment not to sales of services. It is well established that a motion to strike or dismiss raises only a question of law. (Ill. Rev. Stat. 1977, ch. 110, par. 45; *Midwest Glass Co. v. Stanford Development Co.* (1975), 34 Ill. App. 3d 130, 339 N.E.2d 274.) Such a motion attacks the legal sufficiency of a pleading. (*Hamer v. Village of Deerfield* (1975), 33 Ill. App. 3d 804, 338 N.E.2d 242.) Thus, Rockford's motion to strike was sufficient to preserve for appeal the issue of whether the court should have decided the applicability of the limitation clause.

■■ We hold that the trial court should have decided whether the limitation of liability applied to the contract for services between Rockford and GE. The interpretation, construction, or legal effect of a contract is a matter to be determined by the courts as a question of law. (*Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 690, 403 N.E.2d 622.) The meaning to be given to the plain words of a written contract is a question of law. (*Ahlvers.*) A reviewing court may make an independent determination of such a question. (*Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089.) The plain meaning of the terms and conditions to which the agreement to service was allegedly subject is that such terms and conditions referred only to sales of goods. The introductory paragraph of the back of the form stated explicitly that the terms and conditions set forth below applied to "[a]ll sales of material or equipment." Thus, the trial court erred in denying Rockford's motion to strike the affirmative defense of GE, and we reverse the judgment of $2712.22 in favor of Rockford and remand for a new trial on the third-party complaint.

Both the plaintiff and GE have argued in this court that Rockford is barred from any indemnity from GE, as a matter of law, because

Rockford was guilty of active negligence.[1] Additionally, GE argues that its motion for a directed verdict in its favor should have been granted by the trial court. We decline, however, to pass on these issues because no cross-appeal has been brought and, therefore, this court lacks jurisdiction to consider these arguments. *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 319 N.E.2d 336.

## II

■■ The next issue raised by Rockford is whether public policy was violated by an agreement between the injured plaintiff and his employer, GE, which provided that plaintiff receive $100,000, $35,000 of which was in consideration of plaintiff's waiver of any Workmen's Compensation payments owed to plaintiff by GE and $65,000 of which was in consideration of plaintiff's promise, *inter alia*, to indemnify GE and further not to execute upon any judgment plaintiff might obtain against Rockford which Rockford might in turn enforce against GE. Alternatively, the issue is whether Rockford is entitled to a partial satisfaction of the $540,000 judgment against it to the extent of that agreement between plaintiff and GE which does not relate to the Workmen's Compensation settlement, *i.e.*, set-off in the amount of $65,000.

We decline to pass on the public policy issue as Rockford failed to present that argument to the trial court. The theory upon which a case is tried in the lower court cannot be changed on review, and the points argued on appeal must be commensurate with the issues presented at trial. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

But we conclude that Rockford is entitled to a set-off of $65,000. The recent supreme court decision in *Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 412 N.E.2d 518, makes it clear that a double recovery will not be permitted. In construing a type of loan receipt agreement the court said:

> "Here, the policy against double recovery by tort plaintiffs militates against giving complete effect to the intent of intervenors and plaintiff in entering into their agreement. Application of the repayment provision of the agreement, as written and intended by intervenors and plaintiff, would result in a monetary recovery by plaintiff in an amount greater than that which the jury determined

---

[1] *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, repudiated the common law rule of no contribution among tort-feasors and rendered the active-passive negligence doctrine, an exception to the harsh no-contribution rule, of only historical significance. But *Skinner* and its implementing legislation (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) apply only to causes of action arising on or after March 1, 1978. Because this action arose in 1973, we must apply the common law rules to the case at bar.

to be his total measure of damages; plaintiff would be required to repay only $15,000 of the $20,000 advanced by intervenors, thus retaining $5,000 which, when added to the $35,000 owed by the defendant school district under the jury's verdict, would give plaintiff a total recovery of $40,000. This result and the peculiar repayment provision here in question have not been expressly disapproved in any of the court's prior cases dealing with loan agreements [citations], but double recovery is a result which has been condemned in other contexts. (See, *e.g.*, *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 362 (a plaintiff may not recover for the value of services obtained without expense, obligation or liability); *McFadden v. St. Paul Coal Co.* (1914), 263 Ill. 441, 443-45 (availability of remedies under two statutes does not allow double recovery for the same injury).) To the extent that the agreement of intervenors and plaintiff would allow double recovery, we refuse to give it that effect, regardless of the intentions of the contracting parties. 'Payments made by one of the tortfeasors on account of the tort either before or after judgment, diminish the claim of an injured person against all others responsible for the same harm. This is true although it was agreed between the payor and the injured person that the payment was to have no effect upon the claims against the other.' (Restatement (Second) of Torts sec. 885, comment *e* (1979).) Under well-established principles, amounts paid by 'one or more of the joint tort-feasors are to be applied in reduction of the damages recoverable from those remaining in the suit.' *New York, Chicago & St. Louis R. R. Co. v. American Transit Lines, Inc.* (1951), 408 Ill. 336, 342; see *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 441; *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 171." (82 Ill. 2d 203, 208-10, 412 N.E.2d 518, 521.)

The *Popovich* rationale clearly prohibits plaintiff's recovery of amounts additional to the jury's determination which are not attributable to collateral sources, such as his claim for worker's compensation. We therefore reverse the judgment against Rockford and remand so that the trial court may enter a remittitur of $65,000 in favor of Rockford.

## III

■■ Finally, Rockford appeals the trial court's rulings on several disparate evidentiary matters. The first subissue is whether the court erred in allowing plaintiff to cross-examine three witnesses under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). Section 60 permits any party or "the officers, directors, managing agents or foreman of any party" to be called and examined as if under cross-examination. Rockford

argues that two of the three section 60 witnesses, Joseph Mitchalak and Richard Ebert, were but minor functionaries and so failed to meet the rank requirements of the statute.

Joseph Mitchalak was senior technician at GE at the time of his testimony at trial. Mitchalak testified that he was paid by the hour and never evaluated the work of others. Richard Ebert testified that he was employed as an inspection and test man at the time of trial and that he was not in charge of other men. Over Rockford's objection, the plaintiff was permitted to ask leading questions of these witnesses and to otherwise invoke the statute.

The cases seem to require that the witness perform in some authoritative capacity. (See *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 285 N.E.2d 217 (switchboard operator not within section); *Gillespie v. Norfolk & Western R. R. Co.* (1972), 3 Ill. App. 3d 779, 278 N.E.2d 420 (train engineer); *Lamberes v. Northern Cartage Co.* (1967), 86 Ill. App. 2d 311, 229 N.E.2d 901 (truck driver).) In *Karlin v. Inland Steel Co.* (1979), 77 Ill. App. 3d 183, 185, 395 N.E.2d 1038, 1040, the court reversed because the driver of a truck had been examined under section 60, stating: "There was no showing that the driver was the head of a department or that he supervised or had control over the other employees." *Karlin* found that the examination was prejudicial because the examiner was permitted to lead the witness and to introduce parts of his deposition testimony which was not impeachment. While we think that the trial court erred in allowing section 60 examination of these witnesses, there is no prejudice shown by the record or pointed to by Rockford which requires reversal.

The trial court also erred in allowing the examination by plaintiff of a third witness, Eldon Morning, pursuant to section 60. Mr. Morning had been Rockford's Chief Electrician at the date of the occurrence though at the time he gave his testimony he was a laborer. The status of a witness under section 60 is determined at the time of trial not at the date the cause of action arose. (*Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971.) But again, we can see no prejudice to the defendant that requires reversal and hold that the error was harmless.

■■ Rockford next contends the trial court erroneously permitted a Rockford employee, Carl Oskins, to be cross-examined by GE as to whether a Rockford employee had ever worked on the switchboard while it was energized. Rockford argues that this testimony was collateral and irrelevant to the issue of Rockford's negligence at the time of the occurrence. We find from our reading of the record, however, that Rockford opened the door to this line of questioning by asking Oskins if the power to the switchboard was off when previous work was done by Rockford employees. One who induces a court to allow in irrelevant evidence cannot complain if his adversary is also allowed to avail himself

of the opening. See *People v. Dorn* (1977), 46 Ill. App. 3d 820, 361 N.E.2d 353.

The next evidentiary objections can be dealt with summarily. The custom of the industry is relevant and admissible to show community standards of reasonable conduct (Prosser, Torts §33 (4th ed. 1971)); thus, we find no error in the admission of testimony that other GE service customers de-energized the switchboards before GE crews cleaned them. Whatever error occurred in the admission of testimony elicited by plaintiff from a Rockford employee, Walter Fulton, on cross-examination that an arc and explosion had occurred in a different piece of machinery elsewhere in Rockford's plant was harmless in view of the long and complex trial. Finally, in view of fact that it was made clear to the jury that photographs were taken after the occurrence and that conditions had changed somewhat, we affirm the trial court's admission of plaintiff's post-occurrence photographs of the machine which caused his injury and its location in the Rockford plant. (See *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 378 N.E.2d 502.) We also hold that whatever error may have occurred in the trial court's admission of testimony of Robert Freund which was based upon his post-occurrence inspection of Rockford's plant was harmless in view of the testimony of Carl Oskins, a GE employee who inspected the Rockford plant near the time of the incident. Oskins testified, as did Freund, that the Rockford plant was extremely dirty and greasy.

Accordingly, we reverse the judgment in the third-party action and remand for a new trial. We also reverse the amount of the judgment in the plaintiff's action against Rockford and remand the cause to the Circuit Court of Winnebago County for the entry of a remittitur in favor of Rockford Drop Forge Company in the amount of $65,000. In all other respects we affirm the judgment of the Circuit Court of Winnebago County.

Affirmed in part, reversed in part, and remanded.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.