FEDERATED EQUIPMENT AND SUPPLY COMPANY, INC., *et al.*, Plaintiffs-Appellees, v. MIRO MOLD & DUPLICATING CORPORATION *et al.*, Defendants-Appellants.

Second District   No. 2—87—0047

Opinion filed February 22, 1988.

Johnson & Schwartz, of Chicago, and Carl P. Clavelli, of Schiller Park (Donald L. Johnson, of counsel), for appellants.

Ralph J. Schumann and Richard E. Alexander, both of Alexander, Unikel, Zalewa & Tenenbaum, Ltd., of Chicago (Alan L. Unikel, of counsel), for appellees.

JUSTICE NASH delivered the opinion of the court:

Defendants, Miro Mold & Duplicating Corporation (MIRO), Co-Op Mold & Engineering, Inc. (CO-OP), and Jules Stein, appeal from a judgment entered in a bench trial awarding compensatory and punitive damages totaling $1,071,080 to plaintiffs, Federated Equipment and Supply Company, Inc. (FEDESCO), and Lukas American, Inc.

(LUKAS). Defendants contend that the trial court erred: (1) in striking their sixth affirmative defense, which was based upon a claimed arbitration which was alleged to have resolved the dispute between the parties; (2) in issuing an injunction against defendants as the evidence failed to establish that plaintiffs had protectable trade secrets; (3) in finding there was sufficient evidence that defendant Jules Stein conspired with George Rademacher to misappropriate trade secrets; and (4) in awarding compensatory and punitive damages.

In February 1983, plaintiffs filed a five-count complaint against the defendants who have brought this appeal, and also against Viking Rescue Systems, Inc. (VIKING), Rad Engineering Co., Inc. (RAD), and George Rademacher. Count I alleged misappropriation of plaintiffs' confidential trade information and sought injunctive relief and damages. Count II sought damages alleging that MIRO and Jules Stein breached a contract with FEDESCO relating to the development of certain rescue tools. Count III alleged that a civil conspiracy existed between Jules Stein and George Rademacher to appropriate trade secrets and confidential information belonging to plaintiffs and sought injunctive relief and compensatory and punitive damages. Count IV was premised upon the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*) and sought injunctive relief, treble damages, compensatory and punitive damages. Count V also alleged misappropriation of plaintiffs' trade secrets and confidential information and sought compensatory and punitive damages.

MIRO, CO-OP, and Stein filed their answer and set forth several affirmative defenses in the sixth of which they alleged the following: (1) that plaintiffs, through George Weigand, initiated an arbitration proceeding with the East Bolingbrook Congregation of Jehovah's Witnesses against Jules Stein based upon the March 24, 1981, agreement between FEDESCO and MIRO concerning the development of rescue tools; (2) the matters raised in the arbitration were the same as those in the present litigation; (3) hearings were conducted in the arbitration; (4) in June 1982 the arbitration committee ruled in favor of plaintiffs and held that MIRO and Stein were precluded from disclosing, manufacturing, or selling the rescue tools; (5) to effectuate the decision, in June 1982, Stein executed a covenant not to develop the rescue tools, and Weigand executed a promissory note in favor of Stein in the amount of $14,434; (6) Stein and MIRO appealed the arbitration decision and a special committee of the Watch Tower Bible and Tract Society was appointed to consider the appeal; (7) on January 17, 1983, the appeals committee reversed the arbitration decision, and ruled that the covenant executed by Stein was unenforceable, that

Stein and MIRO had the right to develop the rescue tools, and that Weigand must pay the balance of the promissory note; and (8) Weigand agreed that the arbitration decision would be final and binding.

On January 23, 1984, plaintiffs filed a motion to strike the affirmative defenses, which was designated as made pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), and presented a memorandum in support of their motion. In their memorandum, plaintiffs stated, *inter alia*, that the elders of the church of Jehovah's Witnesses only entertain moral issues, and that the only sanction the elders could impose was expulsion from the congregation. On March 1, 1984, plaintiffs filed an affidavit of John H. Ponting, an ordained minister and elder of the Kankakee Congregation of Jehovah's Witnesses, who was identified as the chairman of the congregational committee which had considered the actions of Jules Stein. According to the affiant, the hearings conducted by the Jehovah's Witnesses church were concerned only with moral and not business matters and were not binding on the parties.

On March 13, 1984, at a hearing of the parties' motions relating to the affirmative defenses, defendants' counsel argued that well-pleaded facts in the affirmative defenses must be taken as true for purposes of plaintiffs' section 2—619 motion, and that it was improper for the trial court to strike the sixth affirmative defense relating to arbitration without considering evidence. Plaintiff's counsel read to the court an excerpt from "Aid to Bible Understanding, Watch Tower Bible and Tract Society," which indicated that the church considered doctrinal and moral matters in deciding excommunication issues, and argued that the church considered only the morality of Stein's conduct. The trial court inquired whether an arbitration agreement between the parties existed, and, when defendants' counsel replied that there was no arbitration clause involved in this case, the court found that there had been no arbitration of the issues in the case and granted plaintiffs' motion to strike defendants' sixth affirmative defense. During the subsequent trial, defendants requested that the trial court reconsider its order striking the sixth affirmative defense and made an oral offer of proof; the trial court denied reconsideration.

The evidence at trial, which was quite voluminous, disclosed that FEDESCO and LUKAS were in the business of manufacturing and distributing tools used in rescue operations. In 1979, one of the principal owners of FEDESCO and LUKAS, George Weigand, engaged Jules Stein, a machinist and a principal owner of MIRO and CO-OP, to prepare replacement parts for the rescue tool distributed by LUKAS.

Stein began experimenting with different designs and materials for rescue tools which eventually resulted in the execution of a contract on March 24, 1981, between FEDESCO and MIRO for the development of a spreader arm and cutter for the rescue tool. The contract provided, *inter alia*, that: MIRO was to produce prototypes of the spreader and cutter; all prototype materials, drawings, and samples were to be the property of FEDESCO; MIRO was not to compete with FEDESCO and would treat trade information confidentially; if FEDESCO chose to produce the rescue tools all samples, drawings, and other related items would be turned over to FEDESCO.

In the summer of 1981 George Rademacher, president of RAD and VIKING, became involved in the development of the spreader arm of the rescue tool through his association with Stein, who produced it for FEDESCO. After a prototype spreader arm was tested in September 1981, negotiations concerning production of the rescue tool began. Weigand wished to produce the rescue tool as cheaply as possible, and, when negotiations broke down in December 1981, Weigand sent Stein a letter withdrawing all prior offers and requesting the return of the drawings and other materials related to the project. Further attempts to resolve the differences between Weigand and Stein were unsuccessful. In June 1982, Weigand learned that VIKING was promoting a spreader and cutter which were the same as those developed for FEDESCO by Stein, and that a pamphlet promoting the VIKING rescue tools was published by RAD.

The trial court found for plaintiffs and, after a hearing on damages, awarded compensatory damages under counts I, II, III, and IV in the amount of $188,000 and, in addition, awarded plaintiffs $883,080 in punitive damages under counts III and IV. Defendants were enjoined from making or selling rescue tools which utilized the parts or features claimed by plaintiffs.

■ Defendants contend first that the trial court erred in striking their sixth affirmative defense, which was based upon the alleged arbitration proceeding. They argue that none of the plaintiffs' arguments made in the trial court preclude the sixth affirmative defense, and the court should not have made a determination of factual issues without proper evidence. The plaintiffs respond that the church proceedings did not involve Rademacher and thus could not have been an arbitration of all the matters in this case. The plaintiffs also point to the affidavit of John H. Ponting, which they filed in support of their section 2—619 motion to dismiss the affirmative defense, as evidence that the church proceedings did not constitute an arbitration.

There are issues raised by defendants' first contention which the

parties do not directly address in their briefs. It must first be determined whether arbitration is a proper affirmative defense and, if it is, whether a plaintiff may challenge an affirmative defense by use of section 2—619 of the Code of Civil Procedure. Ill. Rev. Stat. 1985, ch. 110, par. 2—619.

■ An affirmative defense has been defined as one in which defendant gives color to his opponent's claim but asserts new matter which defeats an apparent right in the plaintiff. (*Doherty v. Kill* (1986), 140 Ill. App. 3d 158, 488 N.E.2d 629; *Horst v. Morand Brothers Beverage Co.* (1968), 96 Ill. App. 2d 68, 237 N.E. 2d 732.) In the present case, the claimed arbitration which was pleaded by defendants as an affirmative defense admitted that an agreement was entered into between FEDESCO and MIRO on March 24, 1981, but asserted that the contractual dispute which arose had been resolved through arbitration. Resolution of a dispute by arbitration is analogous to such well-recognized affirmative defenses as payment, release, satisfaction, or discharge (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d)), and we conclude that arbitration can be pleaded as an appropriate affirmative defense. See *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 535, 491 N.E.2d 1322; *Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 509, 428 N.E.2d 608.

■ It must then be determined whether plaintiffs may properly utilize section 2—619 to strike an affirmative defense pleaded in defendants' answer to plaintiffs' complaint.

Section 2—619(a)(9) of the Code of Civil Procedure, upon which plaintiffs' motion to strike was predicated, provides as follows:

"Involuntary dismissal based upon certain defects or defenses.

(a) *Defendant* may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

\* \* \*

(9) That the claim asserted against *defendant* is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9).

It is apparent that the statute provides a means by which a defendant, or other party against whom a claim is asserted (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(b)), may seek dismissal of the action,

or other appropriate relief, on the specified grounds although they may not appear on the face of the complaint. The historical and practice notes to section 2—619 state that "[t]he purpose of this section is primarily that of affording a means of obtaining at the outset of a case a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact. The basis of the motion must go to an entire claim or demand. This amounts to a summary judgment procedure on behalf of the defendant, or on behalf of the plaintiff in case of counterclaim." Ill. Ann. Stat., ch. 110, par. 2—619, Historical and Practice Notes, at 662 (Smith-Hurd 1983).

▆▆ In their briefs, neither party addressed the question whether section 2—619 could appropriately be utilized by plaintiffs to strike defendants' affirmative defense. Defendants' brief appears to treat the motion as one brought under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), asserting that a motion to strike an affirmative defense raises only a question of law as to the legal sufficiency of the pleading and admits all well-pleaded facts constituting the defense, citing, *e.g.*, *Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 422, 487 N.E.2d 758, *appeal denied* (1986), 111 Ill. 2d 581, and *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271, *appeal denied* (1981), 85 Ill. 2d 578. Defendants argue that plaintiffs' motion to strike raised factual issues which the trial court erroneously resolved without a hearing of controverted facts.

Plaintiffs' brief did not address the procedure by which they induced the trial court to strike the affirmative defense of arbitration, and they argue, based upon the factual submissions made by plaintiffs in support of their motion to strike, that the trial court correctly granted it.

▆▆ When in oral argument this court inquired whether their motion was properly brought pursuant to section 2—619, plaintiffs' counsel responded that it was actually treated as a motion for summary judgment to dismiss the affirmative defense in the trial court. Subsequent to oral argument, plaintiffs submitted additional authority and argument in which they contend that the trial court was authorized by section 2—1005(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(d)) to make a summary determination of a major issue in the case, even though it does not determine the whole case, citing historical and practice notes to section 2—1005 (Ill. Ann. Stat., ch. 110, par. 2—1005, Historical and Practice Notes (Smith-Hurd Supp. 1987)). Defendants respond that the amendment of section 2—

1005 by Public Act 84—316, effective September 14, 1985, which permits a partial summary judgment, did not exist on March 31, 1984, when the affirmative defense was stricken by the trial court. At that time, prevailing law did not permit the court to grant a partial summary judgment resolving factual issues unless, as a result, the court could render judgment on the whole case. *Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 211-12, 443 N.E.2d 563.

The difficulties which arise when parties and trial courts do not give effect to the differences which exist between sections 2—615, 2—619, and 2—1005 of the Code of Civil Procedure are made apparent again in this case. The substantive and procedural errors which follow have been often noted and will not be discussed again here. See, *e.g., Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405-06, 312 N.E.2d 605; *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 641-43, 450 N.E.2d 1360; *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 508-10, 439 N.E.2d 60.

Plaintiffs' motion to strike defendants' affirmative defenses was plainly labeled as brought under section 2—619 of the Code of Civil Procedure, a provision which is limited by its terms to defendants who seek dismissal of an action, or other relief, on the grounds specified. We have seen no authority suggesting that section 2—619 may be utilized by a plaintiff as in this case. If considered as a motion to strike an affirmative defense brought under section 2—615, although wrongly labeled (see *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 253, 433 N.E.2d 1350, *appeal denied* (1982), 91 Ill. 2d 569), the motion would admit all well-pleaded facts constituting the defense (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 422, 487 N.E.2d 758, *appeal denied* (1986), 111 Ill. 2d 581; *Bankers Life Co. v. Denton* (1983), 120 Ill. App. 3d 576, 577, 458 N.E.2d 203) and would raise only a question of law as to the legal sufficiency of the pleading (*Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271). Although defendants did not object to the inappropriate section under which the motion was brought, they did correctly argue in the trial court, and on appeal, that the allegations relating to the affirmative defense must be taken as true for purposes of the motion, and could not be controverted without evidence. As we have determined that arbitration may be properly asserted as an affirmative defense, plaintiffs' motion, if treated as brought under section 2—615, should necessarily have been denied.

Here, the trial court summarily concluded in granting plaintiffs'

motion that no effective arbitration had occurred as alleged in the affirmative defense. In doing so, it is apparent the court improperly considered as evidence facts stated in plaintiffs' memorandum and the Jehovah's Witnesses' literature referred to by counsel at the hearing, together with the affidavit of a church official submitted by plaintiffs. See *Franzen-Peters, Inc. v. Barber-Greene Co.* (1987), 155 Ill. App. 3d 957, 961, 508 N.E.2d 1115.

We have determined that plaintiffs' motion to strike could not properly be brought by them under section 2—619, as labeled, and, if considered to have been brought under section 2—615, the trial court erroneously resolved disputed factual matters in granting the motion. Nor could the arbitration issue then be determined by partial summary judgment pursuant to section 2—1005(d), which had not yet been enacted.

■ We conclude that the motion procedure engaged in by plaintiffs, and sanctioned by the trial court, to remove from consideration defendants' affirmative defense of a claimed arbitration prejudiced defendants and requires reversal and a new trial. In doing so we do not consider the substantive merits of this appeal, including the issue of arbitration, but find that the injunction issued herein by the trial court should remain in force subject to its further order.

■ As the matter may arise again on retrial, we note that the trial court erroneously awarded compensatory and punitive damages under counts I and V of plaintiffs' complaint for alleged misappropriation of trade secrets and confidential trade information. It has been held that monetary damages may not be recovered in Illinois in such actions. (*Brunswick Corp. v. Outboard Marine Corp.* (1979), 69 Ill. App. 3d 106, 108, 387 N.E.2d 27, *aff'd on other grounds* (1980), 79 Ill. 2d 475, 404 N.E.2d 205.) As these awards were combined with damages found under other counts of the complaint as portions of the total judgment, that error would also require reversal as to damages. We note too that punitive damages are not favored in the law, and courts must take caution to see that such damages are not improperly or unwisely awarded. *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 211, 454 N.E.2d 210.

Accordingly, the judgment of the trial court is reversed, except for its order for writ of injunction, and the cause is remanded for a new trial.

Reversed and remanded.

DUNN and REINHARD, JJ., concur.