Digitally signed
 by Reporter of
 Decisions
 Reason: I attest to
 Illinois Official Reports the accuracy and
 integrity of this
 document
 Appellate Court Date: 2020.12.31
 12:10:24 -06'00'

 Otto Baum Co. v. SÜD Family Ltd. Partnership, 2020 IL App (3d) 190054

Appellate Court OTTO BAUM COMPANY, INC., an Illinois Corporation, Plaintiff-
Caption Appellee, v. SÜD FAMILY LIMITED PARTNERSHIP, a Wisconsin
 Limited Partnership; METHODIST SERVICES, INC., an Illinois
 Not-for-Profit Corporation; UNKNOWN OWNERS; and
 UNKNOWN NECESSARY PARTIES, Defendants (Süd Family
 Limited Partnership, Defendant-Appellant; Methodist Services, Inc.,
 Defendant-Appellee).–OTTO BAUM COMPANY, INC., an Illinois
 Corporation, Plaintiff-Appellee, v. SÜD FAMILY LIMITED
 PARTNERSHIP, a Wisconsin Limited Partnership; COMMERCE
 BANK NATIONAL ASSOCIATION, a National Banking
 Association; METHODIST SERVICES, INC., an Illinois Not-for-
 Profit Corporation; REGIONS BANK, an Alabama Banking
 Corporation; BUSEY BANK, an Illinois Banking Corporation;
 PEORIA MOB OWNERS, LLC, a Delaware Limited Liability
 Company; SÜD’S OF PEORIA, INC., an Illinois Corporation; THE
 DASCO COMPANIES, LLC, a Florida Corporation; METHODIST
 MEDICAL CENTER OF ILLINOIS, an Illinois Not-for-Profit
 Corporation; METHODIST HEALTH SERVICES CORPORATION,
 an Illinois Not-for-Profit Corporation; FARNSWORTH GROUP,
 INC., an Illinois Corporation; P.J. HOERR, INC., an Illinois
 Corporation; THE CITY OF PEORIA; UNKNOWN OWNERS; and
 UNKNOWN NECESSARY PARTIES, Defendants (Süd Family
 Limited Partnership, Defendant-Appellant; Methodist Services, Inc.,
 Defendant-Appellee).–SÜD FAMILY LIMITED PARTNERSHIP,
 NANCY A. SÜD, and GIAN C. SÜD, Plaintiffs-Appellants, v. OTTO
 BAUM COMPANY, INC.; ATTORNEYS’ TITLE GUARANTY
 FUND, INC.; and METHODIST SERVICES, INC., Defendants-
 Appellees.

District & No. Third District
 No. 3-19-0054
 Filed March 10, 2020
 Modified upon
 denial of rehearing May 18, 2020

 Decision Under Appeal from the Circuit Court of Peoria County, Nos. 09-CH-310, 09-
 Review CH-311, 17-L-105; the Hon. Kevin Galley, the Hon. James Mack, the
 Hon. Stuart P. Borden, the Hon. Michael E. Brandt, the Hon. Michael
 P. McCuskey, the Hon. Jodi M. Hoos, and the Hon. Katherine S.
 Gorman Hubler, Judges, presiding.

 Judgment Vacated and remanded.

 Counsel on Christopher H. Sokn, of Kingery Durree Wakeman & O’Donnell,
 Appeal Associates, of Peoria, for appellants.

 William J. Holloway and Peter M. King, of King Holloway Lipinski,
 LLC, of Chicago, and Jeffrey E. Krumpe, of Miller, Hall & Triggs,
 LLC, and David L. Wentworth II, of Hasselberg, Grebe, Snodgrass,
 Urban & Wentworth, both of Peoria, for appellees.

 Panel PRESIDING JUSTICE LYTTON delivered the judgment of the court,
 with opinion.
 Justice Wright concurred in the judgment and opinion.
 Justice McDade dissented, with opinion.

 OPINION

¶1 This appeal involves three separate cases consolidated by the trial court. In the first two
 cases (09-CH-310 and 09-CH-311), Otto Baum Company, Inc. (Otto Baum), filed suit against
 Süd Family Limited Partnership (Süd), Methodist Services, Inc. (Methodist), and other owners
 of property upon which Otto Baum made improvements. The trial court ruled in favor of Otto
 Baum and entered judgments against Süd and Methodist, which appealed. While that appeal
 was pending, Methodist’s insurer, Attorney Title Guaranty Inc. (ATG), entered into a
 settlement agreement with Otto Baum. After ATG and Süd had paid Otto Baum nearly the full
 amount of the judgments, Süd filed a petition for release of judgments. Soon thereafter, Süd
 was required to pay postjudgment attorney fees, which it did. After Otto Baum was paid its

 -2-
 judgments in full, ATG, pursuant to an assignment from Otto Baum, obtained additional funds
 from Süd through a letter of credit Süd posted on appeal. Süd then filed an action (17-L-105),
 which is the third consolidated case, against Otto Baum, ATG, and Methodist alleging
 conversion, fraud, conspiracy to commit fraud, slander of title, quiet title, and breach of UCC
 warranty. ATG, Otto Baum, and Methodist filed a motion for summary judgment on Süd’s
 petition for release of judgments and Süd’s complaint against them. The trial court granted that
 motion. On appeal, Süd argues that the trial court erred in (1) denying its petition for release
 of judgments; (2) granting ATG, Otto Baum, and Methodist’s motion for summary judgment;
 and (3) denying its motion to compel discovery. We vacate the trial court’s order denying
 Süd’s petition for release of judgments and granting summary judgment to ATG, Otto Baum,
 and Methodist with respect to Süd’s claims against them. We lack jurisdiction to rule on the
 trial court’s denial of Süd’s motion to compel discovery.

¶2 I. BACKGROUND
¶3 In 2004, Süd purchased 40 acres of land in Peoria consisting of five lots, which became
 known as the Süd Plaza Subdivision. Süd planned to build an automobile dealership primarily
 on one lot, Lot 3. In April 2006, Süd entered a contract with Otto Baum to perform grading
 work on Lots 1 through 3. Later in 2006, Süd authorized Otto Baum to construct a roadway to
 provide ingress and egress to the entire subdivision and to perform grading work on Lot 5. On
 May 5, 2007, Methodist purchased Lots 2 and 5 from Süd. In connection with that sale,
 Methodist obtained title insurance from ATG. Otto Baum continued to perform work on Lot 5
 until October 2007. That month the roadway was complete, and Süd opened its dealership.
¶4 On February 8, 2008, Otto Baum recorded its mechanic’s lien for the roadway against all
 five lots of the subdivision. On the same day, Otto Baum filed a mechanic’s lien on Lot 5 for
 the grading work it completed. On July 2, 2009, Otto Baum filed a lawsuit (09-CH-310) against
 Süd and Methodist for the work it completed on Lot 5 (hereinafter, the 310 case). Count I
 sought foreclosure of its mechanic’s lien, and count II alleged breach of contract. Otto Baum
 sought $225,896.78, plus interest. On the same date, Otto Baum filed a lawsuit (09-CH-311)
 against Süd, Methodist, Commerce Bank, and others for foreclosure of its mechanic’s lien and
 breach of contract for the work it performed on the roadway project (hereinafter, the 311 case).
 In that lawsuit, Otto Baum sought $254.589, plus interest.
¶5 The two cases were consolidated for trial. Following a bench trial, the trial court entered
 judgment in favor of Otto Baum in both cases. In the 310 case, the trial court entered a
 monetary judgment against Süd for $492,750.06 on count I and granted Otto Baum a
 mechanic’s lien foreclosure judgment against Lot 5 in the sum of $425,356.79. In the 311 case,
 the court entered a monetary judgment against Süd for $460,463.26 on count I and granted
 Otto Baum a mechanic’s lien foreclosure judgment against lots 2 through 5, allocating
 $77,607.52 per lot. Süd and Methodist appealed. Süd posted a $1.3 million letter of credit as
 security on the judgments while on appeal.
¶6 While the appeal was pending, Methodist, through its insurer, ATG, agreed to pay Otto
 Baum $400,000 as a settlement to release its two lots from foreclosure. The agreement stated
 that $238,065.22 would be applied to the 310 case (“representing partial principal payment of
 the mechanic’s lien on Lot 5 as set forth in the Judgment”), and $161,934.78 would be credited
 to the 311 case (“representing full principal payment of the mechanic’s liens allocated in the
 Judgment to Lots 2 and 5”). The agreement set out the remaining amounts due on the

 -3-
 judgments after the settlement, which were $254,684.84 in the 310 case and $305,248.22 in
 the 311 case. The agreement further provided: “When and if Otto Baum collects the balance
 due it on the entire amount of the Judgments, *** Otto Baum will not satisfy any excess on the
 Judgments, but will assign the same to Methodist as Methodist’s sole and separate property.”
 On appeal, we affirmed the monetary judgments against Süd. Otto Baum Co. v. Sud Family
 Ltd. Partnership, 2016 IL App (3d) 140821-U.
¶7 In early November 2016, Otto Baum drew $686,301.10 from Süd’s letter of credit to pay
 the balance owed on the judgments, according to a spreadsheet provided by Otto Baum’s
 counsel. On November 17, 2016, Otto Baum filed a motion requesting postjudgment attorney
 fees. Attached thereto was an affidavit from Otto Baum’s counsel. According to the motion
 and affidavit, Otto Baum had collected $1,132,776 in satisfaction of the judgments, including
 the $400,000 settlement. The motion and affidavit stated that the amount still owed on the
 judgments was $877.40. The trial court granted the motion and entered an award of $80,109,64
 for attorney fees.
¶8 On February 16, 2017, Süd filed a petition for release of judgments. On March 3, 2017,
 Otto Baum made a draw on the letter of credit of $82,189.54 for postjudgment attorney fees,
 and Otto Baum assigned its judgments to ATG, as Methodist’s representative, pursuant to the
 settlement agreement. Soon thereafter, ATG alleged that it was owed $466,283.57 on Otto
 Baum’s judgments and drew the balance remaining from Süd’s letter of credit: $191,158.45.
 ATG and Methodist claim that Süd still owes $272,152.12 on Otto Baum’s judgments.
¶9 In April 2017, Süd, along with Nancy Süd and Gian Süd, filed a complaint (17-L-105)
 against Otto Baum, ATG, and Methodist alleging conversion, fraud, conspiracy to commit
 fraud, slander of title, quiet title, and breach of UCC warranty. In November 2017, Otto Baum,
 ATG, and Methodist filed an answer to the complaint, along with three affirmative defenses
 and five counterclaims. In March 2018, Süd served written discovery on Otto Baum, ATG,
 and Methodist. In response to requests to admit, ATG admitted that Otto Baum received
 $1,168,490.64 from all sources, including $400,000 from Methodist, “plus $686,301.10 owed
 to [Otto Baum] through November 3, 2016 and $82,189.54 owed to [Otto Baum] through
 March 3, 2017.” However, ATG denied that the judgments in the 310 and 311 cases were
 satisfied on March 3, 2017, asserting that there was still a balance on the judgments of
 $466,283.57 as of that date. Otto Baum, ATG, and Methodist responded to Süd’s request to
 produce documents by raising numerous claims of privilege. In May 2018, Süd filed a motion
 to compel Otto Baum, ATG, and Methodist to produce privilege logs, pursuant to Illinois
 Supreme Court Rule 201(n) (eff. July 1, 2014), describing the nature of the documents not
 produced and the exact privilege being claimed to support their invocations of privilege. The
 trial court denied the motion “with leave to renew after any 201(k) conference.”
¶ 10 Süd filed motions to strike and dismiss the affirmative defenses and counterclaims filed by
 Otto Baum, ATG, and Methodist. In May 2018, the trial court denied Süd’s motion to strike
 and dismiss the affirmative defenses. The trial court granted the motion with respect to three
 counterclaims, dismissing counterclaims I through III with prejudice. The motion to dismiss
 was denied with respect to counterclaim V, and the parties were granted to leave to replead
 counterclaim IV. Thereafter, Otto Baum, ATG, and Methodist repled counterclaim IV, and the
 trial court granted them leave to file a new counterclaim, counterclaim VI.
¶ 11 On July 9, 2018, Süd filed an amended petition for release of judgments in the 310 and 311
 cases, arguing that the judgments were fully satisfied on March 3, 2017. One month later, Otto

 -4-
 Baum, ATG, and Methodist filed a motion to consolidate the 2009 cases (09-CH-310, 09-CH-
 311) with the 2017 case (17-L-105). The trial court granted that motion.
¶ 12 ATG, Otto Baum, and Methodist then filed a “Motion for Summary Judgment on all Süd
 Family Limited Partnership Counts and Süd’s Amended Petition for Release of Judgment.”
 On December 28, 2018, the trial court entered an order denying Süd’s amended petition in the
 2009 cases and granting summary judgment to ATG, Otto Baum, and Methodist in the 2017
 case, ruling that the settlement payment from ATG to Otto Baum was “a collateral source of
 payment to Otto Baum, not partial satisfaction of Süd’s judgment obligation.”

¶ 13 II. ANALYSIS
¶ 14 A. Jurisdiction
¶ 15 First, ATG, Otto Baum, and Methodist argue that we lack jurisdiction over this appeal
 because there was no final judgment issued by the trial court.
¶ 16 “[A] final judgment is a determination by the court on the issues presented by the pleadings
 which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.”
 Resudek v. Sberna, 132 Ill. App. 3d 783, 787 (1985). A written order granting a motion for
 summary judgment is a final and appealable judgment. Id. An order denying a motion for
 release of judgment is a final and appealable order. See Kenny v. Kenny Industries, Inc., 2012
 IL App (1st) 111782, ¶¶ 1, 3.
¶ 17 Here, ATG, Otto Baum, and Methodist sought summary judgment as to “[e]ach one of
 Sud’s 29 counts pleaded against defendants in 17-L-105,” as well as denial of Süd’s amended
 petition for release of judgments filed in the 2009 cases. The trial court’s December 29, 2018,
 order states in pertinent part: “[T]he Amended Petition for Release of Judgments filed on July
 9, 2018 is denied; [t]he Motion for Summary Judgment in 17[-]L[-]105 is granted.” That order
 was a determination by the court on the issues presented in the 2009 and 2017 cases and
 constitutes a final judgment. We have jurisdiction over this appeal.

¶ 18 B. Release of Judgments
¶ 19 Süd argues that the trial court erred in denying its amended petition for release of judgments
 because the judgments in the 2009 cases were fully satisfied.
¶ 20 A proceeding pursuant to section 12-183 of the Code of Civil Procedure (Code) (735 ILCS
 5/12-183 (West 2016)) determines whether all money due has been paid and the judgment has
 been satisfied. Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C., 2015 IL App
 (1st) 140088, ¶ 15. A judgment debtor can, upon tender of the full amount of the judgment
 plus interest and costs to the creditor, compel the creditor to execute a release of the judgment
 under section 12-183(b) of the Code. Peoples v. Carborundum Co., 123 Ill. App. 3d 39, 40
 (1984). “ ‘[A]ctual payment of a judgment in full to a person authorized to receive it operates
 as a discharge of the judgment, whether the payment is made by a judgment debtor himself or
 by one of several judgment debtors, or by another in his behalf.’ ” (Emphasis omitted.) Marks
 v. L.C.J. Construction Co., 89 Ill. App. 3d 418, 421 (1980) (quoting 47 Am. Jur. 2d Judgments
 § 992 (1969)).
¶ 21 Once a judgment is paid in full by one or more defendants, the defendants are statutorily
 entitled to receive a release of the judgment. Peoples, 123 Ill. App. 3d at 42. Agreements
 between parties to allocate the burden of satisfying a judgment in a particular way do not affect

 -5-
 the statutory rights of the defendants to receive a release of judgment when the plaintiff has
 been paid in full. Id. A reviewing court should reverse a trial court’s decision regarding a
 release of judgment only where the trial court abused its discretion. Meyer v. First American
 Title Insurance Agency of Mohave, Inc., 285 Ill. App. 3d 330, 336 (1996).

¶ 22 1. Collateral-Source Rule
¶ 23 ATG, Otto Baum, and Methodist argue that the trial court properly denied Süd’s amended
 petition for release of judgments because the collateral-source rule prohibited Süd from
 claiming that Otto Baum’s judgments were fully satisfied.
¶ 24 A plaintiff is prohibited from recovering amounts in addition to the trial court’s award of
 damages that are not attributable to a collateral source. See Mazanek v. Rockford Drop Forge
 Co., 98 Ill. App. 3d 956, 961 (1981). “Under the collateral source rule, benefits received by
 the injured party from a source wholly independent of, and collateral to, the tortfeasor will not
 diminish damages otherwise recoverable from the tortfeasor.” Wilson v. The Hoffman Group,
 Inc., 131 Ill. 2d 308, 320 (1989). The rule is frequently applied when the injured party has been
 indemnified for the loss by proceeds from his own insurance. Id. In such a situation, the
 damages recovered from the tortfeasor are not decreased by the amounts the injured party
 received from insurance proceeds. Id. The justification for the rule is that the wrongdoer should
 not benefit from expenditures made by the injured party or take advantage of contracts or other
 relations that may exist between the injured party and third persons. Id.
¶ 25 A defendant or a person or entity acting for a defendant is not a collateral source. Wills v.
 Foster, 229 Ill. 2d 393, 411 (2008) (citing Restatement (Second) of Torts § 920A(2) cmt. b, at
 514 (1979)). A defendant’s insurer is not a collateral source because an insurer is not
 independent of and collateral to the defendant but is related to the defendant through contract
 and pays on the defendant’s behalf. Segovia v. Romero, 2014 IL App (1st) 122392, ¶ 25; see
 Freer v. Rowden, 108 Ill. App. 2d 335, 345-46 (1969).
¶ 26 The collateral-source rule generally applies in tort cases. Morse v. Donati, 2019 IL App
 (2d) 180328, ¶ 11. The rule applies in contract cases only where there is an element of fraud,
 tort, or willful and wanton conduct. Jiles v. Spratt, 195 Ill. App. 3d 354, 358 (1990); American
 Fidelity Fire Insurance Co. v. General Ry. Signal Co., 184 Ill. App. 3d 601, 617 (1989).
¶ 27 Here, the trial court abused its discretion in ruling that ATG’s payment to Otto Baum was
 from a collateral source. ATG was Methodist’s insurer, and Methodist was a defendant, so the
 payment came from an entity related to and acting on behalf of a defendant, not a collateral
 source. See Segovia, 2014 IL App (1st) 122392, ¶ 25. Furthermore, the collateral-source rule
 does not apply in this contract action, where Otto Baum did not allege claims for fraud, tort,
 or willful and wanton conduct. See Jiles, 195 Ill. App. 3d at 358; General Ry. Signal Co., 184
 Ill. App. 3d at 617. Because the collateral-source rule does not apply, the trial court abused its
 discretion when it denied Süd’s amended petition for release of judgments.

¶ 28 2. Judgments Against Multiple Defendants
¶ 29 Süd argues that its amended petition for release of judgments should have been granted
 because its duty to pay was extinguished when it and ATG fully paid the judgments.
¶ 30 Generally, the amount paid by one defendant acts to reduce the recoverable damages from
 the remaining defendants. Greenawalt v. State Farm Insurance Co., 210 Ill. App. 3d 543, 547

 -6-
 (1991). Without such a reduction, a plaintiff could obtain damages in excess of his injuries,
 resulting in double recovery. Id. “Illinois has a strong public policy against a plaintiff’s double
 recovery for the same injury.” Klier v. Siegel, 200 Ill. App. 3d 121, 127 (1990). A plaintiff in
 a breach of contract action may not obtain a double recovery for his losses. See Rivenbark v.
 Finis P. Ernest, Inc., 37 Ill. App. 3d 536, 538 (1976).
¶ 31 Where there is a single, indivisible injury caused by more than one defendant, any amounts
 the plaintiff receives from any of the defendants must be deducted from the plaintiff’s total
 damages. Klier, 200 Ill. App. 3d at 127; Young Men’s Christian Ass’n of Warren County v.
 Midland Architects, Inc., 174 Ill. App. 3d 966, 970 (1988). Payments made by one or more of
 the defendants are to be applied to reduce the damages recoverable from the remaining
 defendants. Popovich v. Ram Pipe & Supply Co., 82 Ill. 2d 203, 209 (1980). This is true even
 if the plaintiff and one defendant agree that his payment will not affect the plaintiff’s claims
 against the other defendants. Id. (citing Restatement (Second) of Torts § 885 cmt. e, at 335
 (1979)). When a plaintiff recovers from one defendant, the other defendants are entitled to a
 setoff in that amount. See Mazanek, 98 Ill. App. 3d at 960-61.
¶ 32 Here, the evidence established that by March 3, 2017, Otto Baum’s judgments from the
 2009 cases had been paid in full by ATG and Süd. Süd was entitled to a setoff in the amount
 of ATG’s payments to Otto Baum. See id. Without the setoff, Otto Baum would obtain a double
 recovery. A double recovery is against public policy. See Klier, 200 Ill. App. 3d at 127.
 Because Otto Baum’s judgments were paid in full, the trial court abused its discretion in
 denying Süd’s amended petition for release of judgments.

¶ 33 C. Süd’s Claims Against ATG, Otto Baum, and Methodist
¶ 34 Süd argues that the trial court erred in granting summary judgment in favor of ATG, Otto
 Baum, and Methodist on its claims against them.
¶ 35 Summary judgment is appropriate where “the pleadings, depositions, and admissions on
 file, together with the affidavits, if any, show that there is no genuine issue as to any material
 fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2-
 1005(c) (West 2016). We review a trial court’s grant of summary judgment de novo. Forsythe
 v. Clark USA, Inc., 244 Ill. 2d 274, 280 (2007).
¶ 36 “As a general rule, ‘[a]n assignment *** is the transfer of some identifiable property, claim
 or right from the assignor to the assignee.’ ” A.J. Maggio Co. v. Willis, 316 Ill. App. 3d 1043,
 1047 (2000) (quoting Buck v. Illinois National Bank & Trust Co., 79 Ill. App. 2d 101, 106
 (1967)). The assignment transfers to the assignee all the right, title, or interest of the assignor
 in the thing assigned. Id. The assignee stands in the shoes of the assignor and can obtain no
 greater right or interest than what the assignor possessed. Apollo Real Estate Investment Fund,
 IV, L.P. v. Gelber, 398 Ill. App. 3d 773, 779 (2009). Thus, an assignment is valid only if the
 assignor actually or potentially possesses the thing it attempts to assign. Willis, 316 Ill. App.
 3d at 1047. A defendant who pays a judgment in full cannot create a fictitious assignment to
 another entity to keep the judgment alive and coerce payment from codefendants. See Marks,
 89 Ill. App. 3d at 421 (citing Royal Indemnity Co. v. Becker, 173 N.E. 194, 196 (Ohio 1930)).
¶ 37 Here, the settlement agreement between Otto Baum and ATG provided that: “When and if
 Otto Baum collects the balance due it on the entire amount of the Judgments, *** Otto Baum
 will not satisfy any excess on the Judgments, but will assign the same to Methodist as
 Methodists’ sole and separate property.”

 -7-
¶ 38 The assignment is invalid. Once Otto Baum collected the full amounts of its judgments, it
 had nothing to assign. See Thornton v. Garcini, 237 Ill. 2d 100, 111 (2009) (plaintiff may
 receive only one full compensation for his claims; double recovery is not allowed); Koltz v.
 Jahaaske, 312 Ill. App. 623, 627-28 (1942) (a plaintiff is entitled to one satisfaction of his
 judgment). ATG, acting on behalf of Methodist, could not create a fictitious assignment of a
 fully paid judgment in order to coerce payment from Süd. See Marks, 89 Ill. App. 3d at 421.
 ATG had no right to draw on Süd’s letter of credit, and the trial court erred in granting summary
 judgment to defendants on Süd’s claims against ATG and the other defendants.

¶ 39 D. Motion to Compel Discovery
¶ 40 Finally, Süd argues that the trial court abused its discretion when it refused to compel ATG,
 Otto Baum, and Methodist to produce privilege logs, pursuant to Rule 201(n), describing the
 nature of the documents not disclosed and the precise privilege being claimed to support their
 refusal to produce various documents.
¶ 41 Discovery is a “mechanism for the ascertainment of truth and for the purpose of promoting
 either a fair settlement or a fair trial.” Computer Teaching Corp. v. Courseware Applications,
 Inc., 199 Ill. App. 3d 154, 157 (1990). Trial courts are afforded wide latitude in determining
 the permissible scope of discovery. Pederson v. Mi-Jack Products, Inc., 389 Ill. App. 3d 33,
 41 (2009).
¶ 42 A motion to compel discovery is not a final and appealable order because it does not
 terminate the litigation, either in whole or in part. Saladino v. Team Chevrolet, Inc., 242 Ill.
 App. 3d 735, 743 (1993). An appellate court lacks jurisdiction to review the propriety of a
 denial of a motion to compel discovery. Id.
¶ 43 Here, the trial court denied Süd’s motion to compel but gave Süd permission to refile the
 motion after the parties participated in a Rule 201(k) conference (Ill. S. Ct. R. 201(k) (eff. July
 1, 2014)). The order was not final and appealable; we lack jurisdiction to consider it and
 dismiss that portion of Süd’s appeal.

¶ 44 III. CONCLUSION
¶ 45 For the foregoing reasons, the portion of Süd’s appeal challenging the trial court’s
 discovery ruling is dismissed. In all other respects, the judgment of the circuit court of Peoria
 County is vacated and the cause is remanded for further proceedings. On remand, the trial court
 should consider the affirmative defenses and counterclaims filed by Otto Baum, ATG, and
 Methodist.

¶ 46 Vacated and remanded.

¶ 47 JUSTICE McDADE, dissenting:
¶ 48 I dissent from the majority’s decision that vacates the circuit court’s judgment in this case.
 I would hold that the collateral-source rule applies and that the circuit court correctly resolved
 this dispute.
¶ 49 Understanding the circuit court’s foreclosure judgments and the status of the various parties
 is essential to properly resolving this appeal. The court’s orders show that no monetary
 judgment was entered against Methodist; only Süd was responsible for paying for the work it

 -8-
 contracted with Otto Baum to perform. Further, because Methodist was the owner of Lots 2
 and 5, it was at risk of losing its property if Süd failed to pay the judgments entered against it.
 Thus, pursuant to the title insurance policy it had with Methodist, ATG negotiated with Otto
 Baum to secure a release of Methodist from the foreclosure judgments. That release was
 secured through the $400,000 settlement. Eventually, Süd filed suit against Otto Baum,
 Methodist, and ATG, seeking, inter alia, a setoff for its liability to Otto Baum based on the
 $400,000 settlement. The circuit court ruled that Süd was not entitled to that setoff pursuant to
 the collateral-source rule. The majority now vacates that judgment and rules that Süd—the sole
 financially liable entity in this case—is entitled to a reduction of its liability to Otto Baum
 based on the payment an insurance company (ATG) made for the sole purpose of securing its
 insured’s (Methodist’s) release from foreclosure judgments. The majority’s analysis treats Süd
 and Methodist as if they were jointly and severally liable for the cost of the work Otto Baum
 performed. They were not.
¶ 50 Properly resolving this appeal also requires a more nuanced analysis of the collateral-
 source rule’s definition of collateral sources. The majority states that “[a] defendant or a person
 or entity acting for a defendant is not a collateral source” and that “[a] defendant’s insurer is
 not a collateral source because an insurer is not independent of and collateral to the defendant
 but is related to the defendant through contract and pays on the defendant’s behalf.” Supra
 ¶ 24. The majority then concludes that “ATG was Methodist’s insurer, and Methodist was a
 defendant, so the payment came from an entity related to and acting on behalf of a defendant,
 not a collateral source.” Supra ¶ 26. Again, the majority’s analysis incorrectly assumes that
 Süd and Methodist were jointly and severally liable for the monetary judgments owed to Otto
 Baum. Methodist is only in this case as a defendant because it owned Lots 2 and 5. It did not
 owe Otto Baum for the improvement work performed on those lots. Whether the collateral-
 source rule applies in this case is not as unambiguous as stating that Methodist was a defendant
 and, therefore, the rule does not apply.
¶ 51 The key to the collateral-source rule’s definition of collateral sources is whether a direct
 relationship exists between a defendant and the injured party. In tort, this means a defendant
 who is a tortfeasor. See Wilson, 131 Ill. 2d at 320 (holding that “[u]nder the collateral source
 rule, benefits received by the injured party from a source wholly independent of, and collateral
 to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor”
 (emphases added)). In contract, where the tort concept of “willful and wanton” generally is not
 relevant (see, e.g., Valfer v. Evanston Northwestern Healthcare, 2016 IL 119220, ¶ 27 (holding
 that “because ‘wilful and wanton’ is a tort concept that applies only to reckless or intentionally
 tortious conduct that causes physical harm to a person or property, it has no application to a
 nontort claim such as a routine breach of contract action”)), this generally means a defendant
 that is a party to the contract and is responsible for the breach. See, e.g., GNP Commodities,
 Inc. v. Walsh Heffernan Co., 95 Ill. App. 3d 966, 977 (1981); see generally John G. Fleming,
 The Collateral Source Rule and Contract Damages, 71 Calif. L. Rev. 56 (1983) (discussing
 the complex nature of the collateral-source rule’s application in contract cases). Properly
 classifying a party that is a defendant to a case in which the collateral-source rule may apply
 is necessary to conform with the spirit of the rule, which, as the majority states, “is that the
 wrongdoer should not *** take advantage of contracts or other relations that may exist between
 the injured party and third persons.” Supra ¶ 23. The majority fails to account for the more

 -9-
 complex relations between the parties in this case and, as a result, imposes financial liability
 upon Methodist where it did not previously exist and does not properly belong.
¶ 52 Lastly, I also take issue with the majority’s characterization of the appropriate contract-
 based cases in which the collateral-source rule applies. The majority initially states, “[t]he rule
 applies in contract cases only where there is an element of fraud, tort, or willful and wanton
 conduct.” Supra ¶ 25. In support of this proposition, the majority cites Jiles and American
 Fidelity Fire Insurance Co. The actual quote from Jiles is this: “[i]n contract law, the collateral-
 source rule will apply only where there has been an element of fraud, tort, or willfulness (in
 breaching a contract).” Jiles, 195 Ill. App. 3d at 358. The majority then concludes that “the
 collateral source rule does not apply in this contract action, where Otto Baum did not allege
 claims for fraud, tort or willful and wanton conduct.” Supra ¶ 26. However, the majority cites
 no law for the proposition that specific claims of fraud, tort, or willful and wanton conduct
 must be made within a breach-of-contract case before the collateral-source rule can be applied.
 In fact, because those allegations are not relevant in typical breach-of-contract cases (see
 Valfer, 2016 IL 119220, ¶ 27), they generally will not appear in those cases. Regardless, in this
 case, Otto Baum alleged, in both complaints, that Süd “failed, neglected, and refused to pay”
 for the work it contracted with Otto Baum to perform. Additionally, the circuit court found that
 Süd failed and refused to pay for the work it contracted with Otto Baum to perform. In my
 opinion, in conjunction with the spirit of the collateral-source rule, those allegations and
 findings were more than sufficient to qualify this dispute for application of the rule.
¶ 53 The circuit court determined that the collateral-source rule applied and that Süd could not
 benefit from the payment made to Otto Baum by ATG on behalf of Methodist. That decision
 was correct and should be affirmed.
¶ 54 For the foregoing reasons, I respectfully dissent.

 - 10 -